ANNIE   GARRETT, Appellant, v. ST. LOUIS TRANSIT COMPANY.

Division One, March 31, 1909.

1. **EVIDENCE: Threatening Witness.** Testimony of a witness, who was defendant's conductor at the time of the accident, that defendant's claim agent wrote him that if he did not give his testimony he would probably be indicted for manslaughter, should be excluded. While such conduct is not to be approved, yet in the absence of testimony indicating an evil purpose on the part of the claim agent, the court would not be warranted in assuming his motives were sinister, and such a clause in the letter does not brand him or the defendant of trying improperly to influence the witness or his testimony.

2. ———: **Incriminating Evidence Before Coroner.** The court did not err in excluding the testimony of the witness before the coroner's jury to the effect that he refused to testify for fear his testimony would tend to incriminate him—the witness being the conductor of the car at the time plaintiff's husband fell off or was kicked off of the car and was killed, for whose death she sues the company for damages; and the witness testifying by deposition that he did refuse to testify before the coroner's jury, which investigated the accident, for fear he would incriminate himself, and that part of the deposition offered for purposes of impeachment, being excluded.

219 Sup.—5

3. **PASSENGER: Refusal to Pay Fare: Assault: Instruction: Pertinent to Issue.** If deceased boarded the car with no intention of paying his fare and did not do so when requested by the conductor, and refused to leave the car when notified to do so, he was not a passenger, but a trespasser, and the conductor owed him no duty except not to unnecessarily or intentionally injure him. And where plaintiff brings her suit on the theory that he was a passenger, and that defendant's conductor, in gross violation of its high duty to carry him safely, assaulted him and pushed him off, thereby causing his death, and there is substantial evidence from which the jury might find he was a trespasser, an instruction telling the jury that if deceased entered the car with the intention of not paying his fare and that he refused when the conductor requested him to pay, then he was not a passenger, is in harmony with the issues, and was not error.

4. ——: ——: **Assault: Made by Deceased.** Where plaintiff sues for the death of her husband, charging that he was a passenger and was assaulted by the conductor and pushed off of the car and killed, an instruction telling the jury that if deceased refused to pay his fare and was the aggressor and started the fight with the conductor and during such fight was thrown or pushed off of the car, defendant is not liable, is not erroneous.

5. ——: **Assault: Criminal Conduct.** An instruction telling the jury that the burden is on plaintiff to show that the act of the conductor in ejecting her husband from the car was "an act of criminal conduct" is not erroneous, although the statute under which the suit is brought (Sec. 2864, R. S. 1899) uses the words "criminal intent." Before a recovery can be had under that statute, not only must the intent exist, but the criminal conduct which resulted in the injury must follow.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor,* Judge.

Affirmed.

*Lyon & Swarts* and *Dwight D. Currie* for appellant.

(1) That part of the deposition of H. B. Crady which shows what efforts defendant made to secure his testimony and what inducements or threats were made was an admission upon the part of defendant and should have been admitted. Snell v. Bray, 56 Wis. 156; Cruikshank v. Gordon, 48 Hun 308. (2) The ques-

tions asked H. B. Crady in regard to his testimony before the coroner's inquest and the answers thereto contradict the testimony that he had given in his deposition, showed that he had made outside of court statements inconsistent with his testimony and were admissions against him; and the fact that this testimony was given before a coroner's jury does not render it inadmissible. 30 Am. & Eng. Enc. of Law, 1108; State v. Gattin, 170 Mo. 371; Mulville v. Ins. Co., 19 Mont. 101; Wren's Admr. v. Railroad, 20 S. W. 215; N. Y., P. & N. v. Kellam's Admr., 83 Va. 851; Maxwell v. Railroad, 1 Marv. 205; Ice Machine Co. v. Keifer, 134 Ill. 493; Knights Templars v. Crayton, 209 Ill. 563; Cox v. Railroad, 92 Ill. 19; Bartlett v. Lewis, 12 C. B. N. S. 263; 3 Wigmore on Evidence, sec. 2268; Sullivan v. Railroad, 133 Mo. 1. (3) Instructions 8, 10 and 12, given by the court of its own motion, were improper and prejudicial to plaintiff.

*Boyle & Priest* and *G. T. Priest* for respondent.

(1) The fact that defendant wrote a letter requesting the witness to return to this city and give his testimony is not an admission of any material fact which would go to establish liability or guilt against defendants or that would even tend to fix guilt or liability upon them, and that is the only theory upon which the testimony could be introduced, as an admission against interests. If such evidence be an admission against defendant, then it was properly excluded, as it was not the best evidence, it being merely a statement as to the contents of the letter. The letter itself was the best evidence. It was not shown that the person who wrote the letter had the authority to make any admissions on behalf of defendant; in fact, the testimony does not disclose quite clearly as to who was the author of the letter. Koenig v. Railroad, 173 Mo. 721. (2) Plaintiff complains of the action of the trial court in refusing to allow them to interrogate Crady,

the conductor of the car, concerning his (Crady's) refusal to answer certain questions put to him at the coroner's inquest relative to the death of deceased; Crady refused to answer on the ground that his testimony would incriminate him. This identical question has been decided quite recently in Masterson v. Railroad, 204 Mo. 523. (3) Counsel for plaintiff complain of instruction 8 because it injects into the case an immaterial issue, and, therefore, they say, confused the jury. The instruction submits to the jury the question of whether or not deceased was a passenger. Plaintiff's petition alleges that deceased was a passenger, and grounds her right to recovery upon that fact. Defendant's answer was a general denial, and, therefore, an issue was made as to whether or not deceased was a passenger on the car in question. Counsel for plaintiff further complain of the instruction because they say it tells the jury that if they believe deceased was not a passenger then defendants' conductor had the right to eject him in any manner he saw fit, even to the unwarranted injury of the deceased. Upon reading the instruction, we are unable to discover any such language in it. (4) Instruction 10 tells the jury that if they believe that Garrett voluntarily assaulted the conductor and received his injuries at the hands of the conductor while defending himself, then the company is not liable; in other words, that the fight between deceased and conductor was an affair between man and man with which the company had nothing to do. O'Brien v. Railroad, 185 Mo. 269.

WOODSON, J.—The plaintiff filed this suit in the circuit court of the city of St. Louis on April 8, 1904, against the defendant, for the recovery of $5,000 damages for the alleged wrongful killing of her husband, John Garrett, on the 28th day of March, 1904, by one of defendant's conductors, in charge of a car on the

Olive Street line, while attempting to eject Garrett for the alleged failure to pay his fare.

The petition was in three counts, and a trial was had thereon before the court and a jury, which resulted in a verdict and judgment for defendant; and the court refusing a new trial, the cause was brought here by the plaintiff for review.

The first count of the amended petition was as follows:

"That on the 28th day of March 1904, the plaintiff's said husband, John Garrett, entered and was received by the defendants as a passenger on an eastbound car of the defendants' on the said Olive street, at Beaumont street, on their said line of street railroad; that while the plaintiff's said husband was riding on said car on the rear platform thereof, and while said car was running at a rapid rate of speed on the said Olive street, between Jefferson avenue and Twenty-third street, the defendants' conductor, in charge of their said car, and whilst running, conducting and managing said car as the agent, servant and employee of the defendants, wrongfully and forcibly attempted to eject the plaintiff's husband from said car, and in so doing caused the plaintiff's said husband to fall from said car while said car was in rapid motion and to strike the street with great force and violence, whereby the plaintiff's said husband sustained injuries from which he died in the said city of St. Louis on the thirtieth day of March, 1904, and within six months prior to the commencement of this action; that said acts of the defendants' said conductor in attempting to eject the plaintiff's said husband from said car and in causing him to fall therefrom, were done negligently and with criminal intent, and that the injuries sustained by the plaintiff's said husband and from which he died as aforesaid, resulted from, and were occasioned by, said negligence and criminal intent of the defendants' said agent, servant and employee, to-wit.

the conductor aforesaid, whilst running, conducting and managing the defendants' said car; and that by reason of the death of the plaintiff's said husband, caused as aforesaid, an action has accrued to the plaintiff to sue for and recover from the defendants the sum of five thousand dollars.

"Wherefore, the plaintiff prays judgment," etc.

The second count is the same as the first with the exception that it charges that the wrongful acts complained of and which resulted in the death of plaintiff's husband were done negligently. The third count is also the same as the first with the exception that it charges that the wrongful acts of the conductor of defendants which resulted in the death of plaintiff's husband, were done with criminal intent.

The answer of defendant St. Louis Transit Company, omitting formal parts, is as follows:

"Now comes the St. Louis Transit Company, and answers the three counts of plaintiff's petition as follows:

"This defendant denies each and every allegation in each and every count contained.

"This defendant, further answering each and every count, states that John Garrett boarded the street car mentioned in each count, and refused to pay a fare thereon, and after riding some blocks insisted upon leaving said car without paying fare, and while said car was in motion, by reason of which insistence of his he sustained the injuries, if any, mentioned in each count of plaintiff's petition.

"This defendant further answering each and every count of plaintiff's petition, states that John Garrett mentioned in each count thereof boarded a street car and attempted to pull the conductor off said car while it was in motion, and while struggling with the conductor, and when about to succeed in pulling him off the car, a person unknown to this defendant kicked said Garrett and caused him to release his hold

upon said conductor and fall to the ground, whereby he received the injuries, if any, alleged in each count of the plaintiff's petition.

"Wherefore, having fully answered, this defendant asks to be discharged with its costs."

The answer of the defendant, United Railways Company of St. Louis, is a general denial.

Plaintiff's evidence tended to prove that, at the time of the injury and death of John Garrett, he and plaintiff were husband and wife, and that he died of the injuries received, at the City Hospital in the city of St. Louis, on March 30, 1904.

On the 28th of the same month, about 6 o'clock p. m., John Garrett boarded an east-bound Olive street car at Beaumont street, and stood on the steps of the rear platform of the car. What occurred after the car reached Jefferson and Olive streets, the point where the injury occurred, is well told in the language of plaintiff's witnesses, as substantially stated in appellant's abstract of the record, which is as follows:

DIRECT EXAMINATION: Mrs. Hannah Williams testified that she was a laundress, living in St. Louis. That she was acquainted with John Garrett. That on March 28th, 1904, and six p. m., she boarded an eastbound Olive street car at Sarah and Olive streets, intending to get off at Jefferson and Olive streets. When the car reached Beaumont and Olive streets John Garrett boarded it. When the car reached Jefferson and Olive it stopped on the east side of Jefferson and witness got off; when she came out of the door of the car to get off Garrett was standing on the rear of the back platform, the conductor was in front of him with his right hand holding Garrett's left arm. After witness got off the car she turned around and saw the car going east; Garrett was standing on the step with his back to the sidewalk. The conductor was in front of him, with his hand on Garrett's shoulder. Garrett was standing about the middle of the first or second

step, in front of the upright iron bar, which runs from the middle of the step to the roof of the back platform, his back was to the south and the conductor was facing him, and right up against him with the iron bar between them. As the car proceeded witness noticed conductor give Garrett a shove and Garrett fell backwards to the street, Garrett at the time of the shove having one hand on the upright bar. At the time the conductor shoved Garrett a crowd came out of the car and some one kicked Garrett, but witness could not tell who it was that kicked. This kick followed the shove. Witness went down to where Garrett was lying; blood was coming out of his mouth. Garrett fell about a half block east of Jefferson avenue, the car going at a rapid speed at the time. Witness went near enough to observe whether or not there was any odor of liquor on Garrett's breath, but did not notice any.

Dr. Meissenbach testified that he was a physician residing in St. Louis. On March 28, 1904, some one came to his office and requested him to go down on the street to see a man; he found a colored man lying with his head towards the east, his heels towards the west; he was unconscious; blood coming from his nostrils, breathing seemed labored; the eyes did not act alike. He did not respond to any stimulant, was thoroughly unconscious; blood was coming from one ear and slight bruise on forehead. He was taken to the City Hospital. Witness saw this man next morning at the City Hospital, between 10 and 12 o'clock; he was unconscious, lying in bed with bandages around his head, dark blood coming from nose and mouth. When he saw the man lying in Olive street he examined him to see if he could detect the odor of alcohol, but found no evidences of it, although he smelled the nostrils and breath. The man was lying about one-third of the distance from Jefferson avenue to the next street when witness saw him.

Dr. Nies testified that in March, 1904, he was an interne at the City Hospital; that he recalled John Garrett being brought there; Garrett's skull was fractured on the back of his head; he died about 7 a. m., March 30th. Witness saw nothing other than the fractured skull which could have caused death.

August White testified that he was thirteen years of age and resided at 2627 Olive street, St. Louis, and was a newsboy and was such in the spring of 1904. Witness boarded the car on which Garrett was riding at Beaumont for the purpose of selling papers; he noticed Garrett get on at Beaumont street. Witness did not notice anything happend before the car left Olive and Jefferson avenue; after the car left Jefferson avenue and had proceeded to about the middle of the block, Garrett was kicked off. Witness saw the kick but did not notice who gave it. Garrett was standing on the back step of the car when the kick was delivered, and the conductor was standing close to him; after the kick Garrett fell out into the street. The car did not go very far after Garrett fell; witness remained on the car until it stopped.

CROSS-EXAMINATION: Witness did not see Garrett or the conductor have hold of one another; he saw the kick but did not see who gave it, he being on the north side of the platform selling papers at the time.

DIRECT EXAMINATION: John P. Kridzer testified that he resided in St. Louis and was a paper ruler by trade. On the evening of March 28th, 1904, between 5:30 and 6 p. m., he was standing on the southwest corner of Olive street and Jefferson avenue, looking north; he saw the car on which Garrett was riding coming east. Garrett and the conductor were on the back platform, the conductor standing in front of Garrett; he came toward Garrett with his right arm raised and his index finger out; witness could not hear what words were spoken. The conductor was standing on

the west end of the platform and near the south side; the conductor was east of Garrett and facing west. The car stopped at Olive and Jefferson and a colored woman got off. The car then proceeded down Olive street at a fast rate of speed and increased its speed as it proceeded. The conductor went towards Garrett and the latter moved off towards the edge of the platform; the conductor followed him and Garrett got down on the step and stopped there about where the iron bar runs up; when the car had proceeded about two-fifths of a block from Jefferson avenue some one came out and stood next to the conductor; then some one kicked Garrett and he fell off backwards. Witness could not tell who delivered the kick. At the time of the kick Garrett was standing with the right hand holding the upright iron bar and the left holding the lapel of the conductor's coat and his right shoulder even with the iron bar; Garrett did not reach down; witness examined Garrett after he fell and saw the print of the kick on his clothes over the lower part of the stomach.

RE-DIRECT EXAMINATION: As Garrett moved away from the conductor the latter followed him, shaking his finger at him. It was still light enough to see when the accident occurred.

Mr. SWARTS: "I understand there is no objection raised to this copy of the evidence taken at the coroner's inquest, which is not certified to; I desire to offer the testimony of H. B. Crady, taken at the inquest. He was the conductor of that car."

Defendant's counsel object to the offer of the testimony before the coroner as incompetent, immaterial and irrelevant. The objection was sustained. To which ruling of the court, plaintiff, by her counsel, then and there excepted at the time.

Morton Jourdan, called by plaintiff (oath waived.) Mr. Jourdan did not know whether or not Mr. Walsh, of the Claim Department of the St. Louis Transit Com-

pany, ever represented that company in inquests before the coroner. He may have done so without his knowledge.

Counsel for plaintiff here offer the deposition of H. D. Crady, filed in the case, and offered to read therefrom the following questions and answers:

"Q. Do you know your wife wrote a letter of this purport to the company, dated November 6th, 1904. Mr. Palmer, who is he? A. Claim Agent."

"Q. A letter as follows:

"Mr. Palmer, St. Louis, Mo.

"Dear Sir: I received your letter a few days ago and was very much surprised that you wanted my husband for a witness. It is a wonder you did not keep him there while you had him. How much is his presence at that trial worth to you, and what are you willing to give? I am not sure that he can get off at that time or not, but you name your figure and if it is large enough, I will let you know where you can find him. He is doing very well now and will not come unless there are some inducements. So, awaiting your reply, I am,

"Yours sincerely,
"Mrs. H. D. Crady."

"A. I do not know whether she did or not. I really never paid much attention to it.

"Q. Did you instruct her to send such a letter as that? A. No, sir.

"Q. Did you ever discuss with her the sending of such a letter? A. No, sir.

"Q. Where were you on the 11th day of November? A. I was here in November.

"Q. Now, in reply to that, I will ask you if your wife ever received a letter in reply to that letter? A. I think so.

"Q. Did she turn that letter over to you? A. I think I read it over, yes, sir.

"Q. Is it not a fact that that letter informed you that you had better give your testimony in this case, or you would probably be indicted for manslaughter? A. That letter said something about that.

"Q. Who was that letter from? A. That letter was from—I forget his name—I never saw any letter from Palmer. I forget the man's name.

"Q. What position did he hold? A. I think he is under Palmer—Kavanaugh is his name.

"Q. I will ask you to produce the letter and turn it over to the notary public to be attached to this deposition; will you do it? A. I expect the letter is destroyed. I do not expect it can be done.

"Q. I want to make the request that you produce it and give it to the notary? A. If I have it I will, and if I have not, I cannot. (Not found, memorandum by notary.)

"Q. Did the defendants in this case agree to pay you any money for your testimony in this cause? A. No, sir.

"Q. Did you ever write to your wife and suggest that she write them for money? A. No, sir."

MR. JOURDAN: "We object, for the reason if the deposition of the witness is offered, we are entitled and the jury are entitled to have it all. We object to selecting out one or two extracts and offering it in that way."

Mr. SWARTS: "As an admission, plaintiff offers this part of Conductor Crady's deposition."

The COURT: "That does not apply to this situation."

Defendant's objection is sustained by the court, to which ruling of the court plaintiff by her counsel then and there excepted at the time.

Plaintiff there rested her case.

The defendant, the United Railways Company, interposed a demurrer to the plaintiff's evidence, which was by the court sustained, and judgment went for it

accordingly; but as plaintiff failed to appeal therefrom it will be unnecessary to notice further that company.

The defendant, the Transit Company, also asked an instruction in the nature of a demurrer to the evidence, telling the jury that plaintiff could not recover on the second count of the petition, which was by the court given, to which action plaintiff duly excepted.

Defendant's testimony was substantially as follows, as appears from appellant's abstract:

DIRECT EXAMINATION: William Hawkins testified that at the time of the accident he was standing on the south side of Olive street, east of Jefferson avenue; witness saw the car on which Garrett was riding coming east on Olive street; Garrett was on the back platform, holding the upright iron bar with one hand and the hand-hold with the other; the conductor had hold of his shoulder; Garrett looked as though he had started to jump off when he fell back on the street; there were several people on the rear platform. Witness did not see a lick struck, nor a kick, nor did he see conductor shove Garrett; he was looking towards Garrett and the conductor at the time.

CROSS-EXAMINATION: Witness was standing about 20 or 35 feet from Jefferson avenue; the conductor put his hand on Garrett's shoulder, then rung the bell; the minute Garrett's feet struck the ground the conductor pulled the bell. Witness's idea was that Garrett attempted to jump and struck solidly on his feet which went out from under him and he fell.

DIRECT EXAMINATION: Ira E. Benson testified that in the latter part of March, 1904, witness was a motorman for the St. Louis Transit Company; he quit that company the last of April, 1904, and at the time of the trial was a plumber. On the day of the accident he was motorman of the car following the one on which Garrett was riding; he noticed Garrett get aboard at either Leffingwell avenue or Beaumont street. Witness's car was following from three or four blocks to

two car-lengths; he saw the conductor go to Garrett several times before the car reached Jefferson avenue; when the car got to Jefferson it stopped an unusually long time. Witness stopped at the crossing of Jefferson avenue, and the conductor of the car in front held it so long that he rang his gong for him to go ahead; the conductor and Garrett were standing near the edge of the platform, the conductor laid his hand on Garrett's shoulder but did not strike him; Garrett stooped, facing towards the conductor, at the edge of the platform, within a foot of the steps; the car had gone about 75 feet from Jefferson avenue when this occurred. The conductor was holding the rod with both hands; Garrett had given a jerk, when a passenger on the platform kicked or struck Garrett in the stomach; Garrett then turned loose of the conductor and stepped back. The car went down to Twenty-third and Olive before it stopped.

CROSS-EXAMINATION: At the time Garrett was kicked off the car on which he was riding it was going about twenty miles an hour. Before the car on which Garrett was riding left Jefferson avenue the conductor was standing on the platform in front of him and Garrett was on the step; part of the time the conductor had his hands on Garrett's shoulder, and was talking to him, apparently. As the car started down Olive street Garrett had his left hand on the rod; when the car had gone about 60 or 65 feet Garrett took his hand off of the rod, the car then going about 15 miles an hour, reached down and grabbed the conductor about the legs, then someone came out and kicked two or three times; while this kicking was being done the conductor struggled to his feet, he having fallen to the platform, and held himself by the rod. Witness was about 75 feet behind Garrett and the conductor when Garrett grabbed the latter's legs.

Defendant offered the deposition of Hugh B.

Crady, taken in this case at Fort Worth, Texas, on behalf of defendants:

Witness testified that he was living in Fort Worth, Texas; he was conductor on the car from which Garrett fell. Garrett boarded the car at 2700 or 2800 and refused to pay his fare, and witness told him he would have to pay his fare or get off; Garrett said he was only going a short distance and was not going to pay. Witness told him to do one or the other and Garrett said he would not get off, whereupon witness took hold of him and while doing so Garrett told him that if he did not let go of him he would take him off too, and grabbed witness around the ankles; witness had hold of the lapel of Garrett's coat with one hand and the upright iron rod in the center with the other. Witness did not know what happened, but Garrett let go and fell backwards; he did not know whether or not some one kicked Garrett. Witness jumped off of car and went to where Garrett was lying, and left him in charge of a conductor who was laying off. Witness did not attempt to strike or kick Garrett, nor did he see anyone else do so; his object in holding to him was that he should pay his fare and not get off in the middle of the block while the car was going. There were several passengers on the back platform at the time.

CROSS-EXAMINATION: When Garrett got on the car he said he would not pay any fare; he stood on the step and leaned up against the post in the center; he did not get off of the step. Witness did not make him get off of the car at Jefferson avenue because he thought that he would pay his fare; as soon as the car left Jefferson avenue he took hold of Garrett because he thought that he was going to get off of the car, and besides witness wanted to collect his fare.

Witness denied in his deposition that he made the following statement to police officer Thomas F. Cuddihee: "Garrett got on my car at 27th and Olive and refused to pay his fare, saying he was only going a short

distance, and I told him he would have to get off at Jefferson avenue if he did not pay his fare. He did not get off at Jefferson avenue and after leaving Jefferson avenue he started to get off the car, and in order to keep the man from falling I caught hold of him—in order to keep him from falling—in the meantime a citizen was going to get off at Twenty-third street, and in jarring up against him he knocked him off." Witness admitted that he did make a statement to the officer but not the above one. He could not tell whether he said to the motorman, G. W. Haase, "Only a man fell off the car." Witness attended the coroner's inquest held over Garrett; he made a statement, but did not suppose that it could be called testifying; he was asked, at the coroner's inquest, and stated the car on which he and motorman G. W. Haase were running on March 28th, 1904, about 6 o'clock p. m.; he was also asked if John Garrett was on the car, and stated that there was a colored man on the car; he did not know his name.

At the taking of the deposition the following questions were asked and answers given, which counsel for defendant omitted to read, but which counsel for plaintiff offered to read as a part of defendant's testimony, and also in rebuttal for the impeachment of Crady's testimony:

"Q. Were you asked the following questions at the coroner's inquest: 'Q. Will you make a statement to the jury?' A. I was. Q. And to the question did you make reply as follows: 'I do not care to make a statement to the jury.' A. Yes, sir. Q. Were you asked at the same inquest why you did not care to make a statement? A. I was. Q. And did you reply to that: 'Well, my attorney told me not to?' A. I did. Q. Then were you asked at the same inquest: 'Well, what attorney, the attorney for the Transit Company?' A. I was. Q. Did you answer that: 'Well, yes, sir?' A. I said for the Transit Company and for my per-

sonal interests, too.  Q.  Were you asked this question at the same inquest: 'Are you afraid you will incriminate yourself?'  A.  I was.  Q.  And did you reply to that question, at the inquest, 'Yes, sir?'  A.  No, sir.''

All of which above set-out questions and answers were objected to by counsel for defendant when said deposition was being read at the trial and the objection sustained by the court, to which action of the court the plaintiff, by her counsel, then and there excepted at the time.

Witness was discharged by the Transit Company about August 1st, 1904, and then left St. Louis and went with his wife to Eddyville, Kentucky, to visit relatives of his wife; from Eddyville he went to various places and finally to Fort Worth, Texas, where he was living with his wife when his deposition was taken. The wife of the witness had forwarded to him one letter which she received from the Transit Company and had received one after she came to Fort Worth; witness did not have the letters with him.

Witness testified that the car, after it left Jefferson avenue, was going about ten miles an hour; that he stepped off of it while it was going at the same rate as it was when Garrett fell off.  Witness did not take hold of Garrett to push him off, nor did he kick him off.

RE-DIRECT EXAMINATION:  Witness smelt the odor of whiskey on Garrett's breath, but could not say that he was under the influence of liquor.  Witness appeared to give his deposition in answer to a subpoena and had not been offered any reward or remuneration of any kind for giving his testimony; that he felt somewhat unfriendly toward defendant.

Defendant rested here.

In rebuttal:

DIRECT EXAMINATION:  Thomas F. Cuddihee testified that on March 28th, 1908, and on the day of trial,

219 Sup.—6

he was a police officer of the city of St Louis; to the best of his recollection the conductor of the car from which Garrett fell, stated to him, at the time, that Garrett refused to pay his fare, saying he was only going a short distance, and the conductor told Garrett that he would have to get off at Jefferson avenue, if he did not pay his fare; Garrett did not get off at Jefferson avenue, but afterwards started to get off and he took hold of him to keep him from falling, and in the meantime a passenger was going to get off at 23d street, and he thought that this person shoved Garrett off.

CROSS-EXAMINATION: The conductor told the officer that he did not shove or kick Garrett; that he started to get off in the middle of the block.

Thereupon the plaintiff prayed the court to give the jury the following instructions, to-wit:

"The court instructs the jury that if they believe from the evidence that on the 28th day of March, 1904, and at the time of his death on the 30th day of March, 1904, the plaintiff was the lawful wife of John Garrett and that on said 28th day of March, 1904, the defendant, St. Louis Transit Company, was a carrier of passengers for hire and used and operated the railroad and car mentioned in the evidence for such purpose; and if the jury further believe from the evidence that the defendant, St. Louis Transit Company, received the said John Garrett as a passenger on said car on said 28th day of March, 1904, and if the jury further believe from the evidence that while the said John Garrett was on said car the defendant's conductor in charge of the said car, whilst running, conducting, and managing said car as the agent, servant and employee of the defendant, wrongfully and forcibly attempted to eject the plaintiff's said husband from said car, and that the plaintiff's said husband was thereby caused to fall from said car while said car was in rapid motion and to strike the street with great force and violence,

and that thereby the plaintiff's said husband sustained injuries from which he died on the 30th day of March, 1904, and if the jury further believe from the evidence that said acts of the defendant's said conductor, in attempting to eject the plaintiff's said husband from said car and causing him to fall therefrom, if the jury so find from the evidence, were done with criminal intent, and unless the jury further believe from the evidence that the plaintiff's said husband was injured by his voluntarily attempting to leave said car, or by an attempt on his part to forcibly pull said conductor from said car, then the verdict of the jury must be in favor of the plaintiff on the third count of her amended petition.''

Which instruction the court refused to give; to which action and ruling of the court, in refusing to give said instruction, the plaintiff then and there duly excepted at the time.

And the court of its own motion gave to the jury the following instructions, to-wit:

''The court instructs the jury that if they believe from the evidence that on the 28th day of March, 1904, and at the time of his death on the 30th day of March, 1904, the plaintiff was the lawful wife of John Garrett, and that on said 28th day of March, 1904, the defendant, St. Louis Transit Company, was a carrier of passengers for hire and used and operated the railroad and car mentioned in the evidence for such purpose; and if the jury further believe from the evidence that the defendant, St. Louis Transit Company, received the said John Garrett on said car on said 28th day of March, 1904, and if the jury further believe from the evidence that while the said John Garrett was on said car the defendant's conductor in charge of said car, whilst running, conducting and managing said car as the agent, servant and employee of the defendant, wrongfully and forcibly attempted to eject the plaintiff's said husband from said car, and that the plain-

tiff's said husband was thereby caused to fall from said car while said car was in rapid motion and to strike the street with great force and violence, and that thereby the plaintiff's said husband sustained injuries from which he died on the 30th day of March, 1904, and if the jury further believe from the evidence that said acts of the defendant's said conductor, in attempting to eject the plaintiff's said husband from said car and causing him to fall therefrom, if the jury so find from the evidence, were done with criminal intent, then, the verdict of the jury must be in favor of the plaintiff on the third count of the amended petition.''

"8.    If you find from the evidence that plaintiff's husband boarded the car with the intention of not paying his fare or that when the conductor requested the payment of his fare he refused to pay same, then he was not a passenger in contemplation of law.

"9.    If you find and believe from the evidence that plaintiff's husband was engaged in a scuffle with the conductor, and just immediately before he fell or was pushed from the car, he had hold of the conductor and was attempting to pull the conductor from the car, then the conductor had the right to use such force as was necessary in order to prevent plaintiff's husband from pulling him from the car while it was in motion, and if plaintiff's husband was injured as the result of the conductor's efforts to save or protect himself, defendant is not liable, and you will find for the defendant.

"10.    If you find that the defendant's conductor in charge of the car had demanded of the plaintiff's husband that he pay his fare and that he refused so to do, and that a scuffle and fight ensued, which was brought on by the plaintiff's husband or voluntarily entered into by plaintiff's husband, and that during such scuffle or fight he was thrown, pushed or fell from said car and was thereby injured, then this defendant is not liable for the acts of the conductor, and your

verdict will be for the defendant. In order to voluntarily enter into a scuffle one must do so for the purpose of offensive attack. One who engages in a scuffle for the purpose of defending himself cannot be said to do so voluntarily.

"12. Before the plaintiff can recover in this case, she must establish an act of criminal conduct upon the part of the defendant's conductor by a preponderance of the testimony. This burden is imposed upon the plaintiff by law, and in determining the facts, you should be governed by this instruction.

"By preponderance of the testimony is meant by a greater weight of the testimony and to your reasonable satisfaction.

"In this connection you are instructed that if the plaintiff has failed to show said act of criminal conduct upon the part of the conductor, then your verdict will be for the defendant."

To the giving of which instructions, and each of them, the plaintiff then and there duly excepted at the time.

The court at the instance of the plaintiff gave the following instruction:

"A. By the expression criminal intent as used in this instruction is meant a reckless disregard for and a wilful and intentional indifference to the direct consequences which an act may have on the life' or limb of another."

And the court at the instance of the defendant, St. Louis Transit Company, gave to the jury the following instructions, to-wit:

"The court instructs the jury that if they believe from the evidence that John Garrett, at the time and place mentioned in the evidence, of his own accord, jumped or fell from defendant's car, then your verdict shall be for the defendant.

"The court instructs the jury that if they believe from the evidence that John Garrett, at the time and

place mentioned in the evidence, attempted by throwing his arms around the knees of the conductor in charge of said car to pull said conductor off of said car, and that the conductor resisted and defended himself against such attempt and during and as a result of said resistance, plaintiff's husband fell or was pushed from said car, then your verdict shall be for the defendant; provided you further believe from the evidence that the conductor used only such force in defending himself as the circumstances seemed to warrant.

"The court instructs the jury that if they believe from the evidence that John Garrett, at the time and place mentioned in the evidence, was kicked or shoved from the car in question by some person unknown, standing on the back platform of said car, other than the conductor, and that prior to said act of kicking, the conductor had no knowledge or intimation that the same would be done, and if they further believe from the evidence that the conductor in no way aided or abetted or caused said kicking to be done, then your verdict shall be for the defendant.

"4.    The court instructs the jury that under the law and all the evidence, plaintiff is not entitled to recover against the defendant St. Louis Transit Company, under the first count in the petition, and your verdict as to that count will be for that defendant.

"11.    You are the sole judges of the credibility of the witnesses and of the weight and value to be given to their testimony. And in this connection you are instructed that you have a right to take into consideration the appearance and conduct of the witnesses upon the stand while testifying, their interest in the result of the case, their feeling for or against either of the parties to the litigation, the probability or improbability of their statements, their positions at the time of the accident, and their ability to see and to know what was going on; and you are instructed in this connection, that if you believe that any witness has wilfully

sworn falsely to any material fact, you are at liberty to disregard any portion or all of the testimony of such witness.''

To the giving of which instructions, and each of them, the plaintiff then and there duly excepted at the time.

As before stated the jury found for defendant, and from the judgment entered therein the plaintiff duly appealed.

The assignment of errors is as follows:

''1.   The court erred in excluding competent and legal evidence offered by the plaintiff.

''2.   The court erred in giving improper instructions to the jury.''

I.   The first error assigned by counsel for appellant regards the action of the trial court in excluding from the jury that part of the deposition of H. D. Crady, taken in Fort Worth, Texas, which relates to a letter he testified his wife received from one of the claim agents of defendant, written in reply to her letter written to Mr. Palmer, before mentioned, which is as follows:

''Mr. Palmer,

''St. Louis, Missouri.

''Dear Sir:—I received your letter a few days ago and was very much surprised that you wanted my husband for a witness.   It is a wonder you did not keep him there while you had him.   How much is his presence at the trial worth to you, and what are you willing to give him?

''I am not sure he can get off at that time or not, but you name your figure and if large enough, I will let you know where you can find him.   He is doing very well now and will not come unless there are some inducements.

''So, awaiting you your reply, I am,

                    ''Yours,'' etc.

The letter from the claim agent, in reply to Mrs. Crady's letter, had been either lost or destroyed, and for that reason was not attached to and made a part of said deposition; but he testified that the substance of that letter was that if he, Crady, did not give his testimony in the case he would probably be indicted for manslaughter.

Counsel for appellant contends that the letter written by the claim agent of respondent in reply to the letter of Mrs. Crady to Mr. Palmer was the admission of a threat made by the company of a prosecution of John Crady for manslaughter if he did not appear and testify in this case.

In support of that contention counsel rely upon the cases of Snell v. Bray, 56 Wis. 156, and Cruikshank v. Gordon, 48 Hun 308.

The former case held that letters written by or at the instigation of a party to an action to third persons warning them not to aid the other party or testify in the action or urging them to testify to a particular state of facts were in the nature of admissions by conduct and were admissible in evidence. The latter case is to the same effect.

In our judgment the letters referred to in those cases were properly admitted in evidence, but in the case at bar there is no pretense that the letter written by the claim agent warned Crady not to aid plaintiff or testify in her behalf, or to testify to any particular state of facts, as was true in the cases before mentioned. In fact Crady testified that he was offered no money to testify, nor did he say the respondent desired or wished him to do or not to do anything which was improper, legally or morally. According to his testimony, the extent of the threat was simply to induce him through fear to return to the State and testify as a witness in the case. In the absence of any testimony indicating an evil purpose on the part of the claim agent in writing the letter, the court would not be war-

ranted in presuming his motives were sinister or improper; but, upon the contrary, we must presume his intentions were good.  While neither the law nor good citizenship endorse that means of procuring the attendance of witnesses upon courts of justice, yet that fact alone should not brand the writer of the letter and his principal as trying improperly to influence the witness or his testimony.

We are, therefore, of the opinion that the court rightfully excluded the testimony.

II.  It is next insisted by counsel for appellant that the trial court erred in excluding from the jury certain questions and answers contained in the deposition of H. B. Crady, the conductor, with whom Garrett had the difficulty, and which resulted in his death.

Defendant had read his deposition to the jury, wherein he testified that deceased boarded his car and refused to pay his fare; that when the car reached Jefferson avenue he told him he must pay his fare or leave the car, and that he refused to do either; that he took hold of him and while doing so Garrett told him if he did not let him go he would take him off too, and grabbed him, Crady, around the ankles; and that while in that position he was holding onto Garrett's coat with one hand and to an upright iron rod with the other; and that while so holding, Garrett let go his ankles and fell back in the street and was injured, but that he did not know what caused him to fall.

The questions and answers were offered for the purpose of impeaching Crady, and are as follows:

"Q.  Were you asked the following questions at the coroner's inquest: 'Will you make a statement to the jury?'  A.  I was.

"Q.  And to the question did you make reply as follows: 'I do not care to make a statement to the jury?'  A.  Yes, sir.

"Q. Were you asked at the same inquest·why you did not care to make a statement? A. I was.

"Q. And did you reply to that: 'Well, my attorney told me not to?' A. I did.

"Q. Then were you asked at the same inquest: 'Well, what attorney, the attorney of the Transit Company?' A. I was.

"Q. Did you answer that, 'Well, yes, sir?' A. I said for the Transit Company and for my personal interests too.

"Q. Were you asked this question at the same inquest: 'Are you afraid you will incriminate yourself?' A. I was.

"Q. And did you reply to that question at the inquest, 'Yes, sir?' A. No, sir."

Counsel for respondent contend that the action of the court in excluding that testimony was proper, and rely upon the case of Masterson v. Railroad, 204 Mo. 507, as supporting their contention.

In that case this court In Banc, speaking through VALLIANT, J., page 523, used this language:

"The motorman was a witness for defendant and gave his account of the accident. On cross-examination he was asked if he had testified at the coroner's inquest and he answered, 'No.' 'Were you present at the inquest? A. Yes.' The counsel for plaintiffs then produced and showed to the court what purported to be a transcript of the evidence taken at the coroner's inquest, in which it appeared that this motorman was sworn as a witness and had in answer to a question stated his name, residence and business; he was then asked to state all about running over this boy, whereupon he said: 'I don't care to testify; I might incriminate myself.' The court on objection of defendant ruled that that statement should not go to the jury. That is assigned for error.

"The court's ruling on that point was correct. The statement of the witness that he had not testified at the

Garrett v. Transit Co.

coroner's inquest was substantially true and as the witness evidently understood it it was entirely true. Plaintiffs were not entitled to have the jury in this case draw an inference to the prejudice of the defendant from the fact that the motorman through caution, or timidity for his own sake, would decline to testify before the coroner. He had just gone through the distressing experience of having killed a child, and though he may have been entirely conscious of having done everything in his power to prevent it, yet the distressing fact remained, the law did not compel him to speak, and he declined to do so, but that was his personal affair, with which the defendant had nothing to do.

"The contention of plaintiffs is that the evidence was competent as tending to impeach the witness; the inference they would draw is that if he had not been afraid of incriminating himself he would have told a different story at the coroner's inquest from that which he told at this trial, and the fact that he declined for that reason to testify puts him under the suspicion of carrying a guilty conscience and authorizes the jury to discredit his testimony. The right of the motorman to refuse to testify under the circumstances stated was a personal right of such high importance that it is expressly guarded in the Constitution itself. It is there given absolutely and unequivocally, yet we are now asked to declare that it is a right which the citizen will exercise at his peril, the peril of being branded with suspicion, the peril of having it brought up against him to impeach himself if he should ever assert his innocence. Such a ruling would be a gross impairment of the constitutional right, because it would burden it with a dangerous consequence. Not only is this right given in the Constitution but the General Assembly in dealing with another feature of the same subject has shown its high appreciation of it. In section 2637, Revised Statutes 1899, the right of an accused person to

testify in his own behalf is given, but to guard the person from suspicion for failing to avail himself of that right that section is immediately followed by one which expressly forbids an invidious inference to be drawn from that fact, and forbids any reference to it being made by court or counsel. The courts have no right to brand as criminal or suspicious an act which the law unconditionally and unequivocally authorized to be done.

"In the brief of counsel for plaintiffs several authorities are cited as supporting their contention, but as we understand those cases there is only one that sustains the position, that is, Commonwealth v. Smith, 163 Mass. 411. In that case the defendant, an alderman, was indicted for engaging in a conspiracy to solicit bribes in connection with his official duties. On the trial the defendant was a witness in his own behalf and testified in effect that he was innocent of the charge; on cross-examination, over his objection, the trial court required him to answer whether he did or not refuse to testify before the grand jury on the ground that he might incriminate himself. The Supreme Court of Massachusetts held that was not error. But in discussing the subject that court pointed out a peculiarity of the law of that State which is quite different from the law of Missouri. The court said: 'In this Commonwealth, the cross-examination [of a defendant] is not restricted to matters inquired of in chief. He may be cross-examined like other witnesses. He may be questioned as to all incriminating circumstances, and he must answer all such questions as are relevant to the subject of the charge against him. Whatever he has said or done, or omitted to say or do, which is relevant, may be inquired into.' Even if our law did not, as it does, limit the cross-examination of a defendant in a criminal case to the matters in relation to which he had testified to in chief, we would not say that a man who had only availed himself of a high personal privilege

which the Constitution had given him was for that reason to be stigmatized with suspicion of guilt or have it brought up to discredit him as a witness when he avails himself of the right given him by law to testify in his own behalf. We must not interpret this provision of our Constitution as if it was designed to protect the guilty nor should we presume that one who avails himself of it is hiding his guilt. The object of the law is to protect the innocent and the law still covers the man with the presumption of innocence even when he refuses to give testimony that might be turned against himself.

"The trial court committed no error when it refused to allow this evidence to go to the jury to impeach the motorman as a witness."

There can be no question but what that case is directly in point and fully supports the action of the circuit court in excluding the testimony in question; but in my judgment that case is supported by neither reason nor authority.

The authorities are uniform on both sides of the Atlantic in holding that the testimony given by a witness before the coroner's inquest is admissible in evidence for the purpose of contradicting and impeaching such witness when he subsequently testifies in another court regarding the same matter. [30 Am. and Eng. Ency. Law, 1108; State v. Gatlin, 170 Mo. l. c. 371; Mulville v. Ins. Co., 19 Mont. l. c. 101; Wren's Admr. v. Railroad, 20 S. W. 215; Railroad v. Kellam's Admr., 83 Va. 851; Maxwell v. Railroad, 1 Marv. (Del.) 205; Ice Machine Co. v. Keifer, 134 Ill. l. c. 493; Knight Templars v. Crayton, 209 Ill. 563; Cox v. Railroad, 92 Ill. App. l. c. 19; Bartlett v. Lewis, 12 C. B. N. S. 249, l. c. 263; 3 Wigmore on Evidence, sec. 2268; Sullivan v. Railroad, 133 Mo. 1.]

Clearly, Crady could not have been compelled to have testified before the coroner if he considered his testimony would incriminate him. [Masterson v. Rail-

road, supra; Counselman v. Hitchcock, 142 U. S. l. c. 562 to 586.] The latter case is an able review of all of the authorities treating this subject.

But the law is equally well settled that the witness may waive this constitutional right and testify freely and fully upon any and all matters relevant to the case. [3 Wigmore on Evidence, p. 3132, sec. 2268, and cases cited.]

That privilege is personal to the witness and cannot be exercised for him by any other person, even though his testimony amounted to a confession of guilt to the most heinous crime known to the law. That being true of necessity, and all of the authorities so hold, that the witness may be called to the witness stand and interrogated before the coroner upon any and all elements of the case under investigation, and neither the witness nor his counsel have a right to object to his being called, or to object to the asking of such questions; but if he does not wish to answer them then he has a perfect legal right to refuse to do so. That refusal according to reason and all of the authorities guarantees to the witness all of his constitutional rights to decline to give testimony against himself. So it must logically follow that when a witness goes upon the witness stand and testifies or declines to testify, that testimony and conduct become public property, and may and should be used to contradict and impeach him whenever he subsequently takes the stand and testifies and conducts himself differently from what he did before the coroner, even though his subsequent testimony is given in a case in which he is on trial for his life or liberty, with the limitation only that under sections 2637 and 2638, Revised Statutes 1899, he can not be interrogated regarding any matter to which he did not testify in chief, but he may be lawfully interrogated upon cross-examination regarding all things he testified about in chief, however self-incriminating his answers may be, even to the extent of asking him if he

did not testify differently before the coroner or other court. [Spies v. Illinois, 123 U. S. 131; State v. Mounce, 106 Mo. 226; State v. Avery, 113 Mo. 475; State v. Porter, 75 Mo. 171; State v. Turner, 76 Mo. 350.]

Under the rules of evidence above enunciated, I think Crady's testimony and conduct before the coroner's jury were clearly admissible in evidence in this case to which he was not a party, for the purpose of contradicting and impeaching him as a witness in the case at bar, wherein he testified fully and freely.

To my mind it is an anomalous rule of law that will prevent any one from interposing the personal privilege of a witness to answer questions which might incriminate him, yet will permit a party to successfully object to the introduction of such testimony of such witness given upon a former occasion for the purpose of impeaching him.

But however unreasonable that rule may appear, it has been definitely settled in this State by the opinion of this court In Banc, in the case of Masterson v. Railroad, supra, and I therefore respectfully bow to the majority opinion.

III.   Counsel for appellant challenges the correctness of instruction numbered 8 given by the court of its own motion.   The objection lodged against the instruction is that it "was not justified by any of the issues in the case and could have no other effect than to confuse the jury by injecting into the case an immaterial issue."

We are unable to yield our assent to that proposition, for the reason that the petition charged Garrett was a passenger upon the car, in which the encounter complained of occurred, and appellant tried her case upon the theory that he was a passenger upon that car; that the conductor criminally assaulted him and threw him therefrom, thereby killing him.   In other

words, appellant's case was tried upon the theory that Garrett was a passenger upon the car and that the respondent owed him that high degree of care to safely carry him that a public carrier owes to a passenger, and that it grossly violated that duty by criminally assaulting and killing her husband. Before appellant could recover on the petition in this case it was absolutely necessary for her to show, not only that her husband was assaulted and killed by the conductor, but also that he was a passenger upon the car, from which relation sprang the duty respondent owed her husband, and which she alleges it violated. Now, if Garrett boarded the car with no intention of paying his fare and did not do so when requested by the conductor, and refused to leave the car when notified to so do, then he was not a passenger upon the car, but was a trespasser, pure and simple, and the respondent owed him no duty whatever as a passenger, but only owed him such duty as the law imposes upon every one, and that is not to unnecessarily and intentionally injure him. If as a matter of fact Garrett was a trespasser upon the car, of which there was an abundance of evidence tending to show; and if he was criminally assaulted and killed by the conductor, then the petition should have been drawn upon that theory and not upon the theory that he was a passenger.

The respective rights and duties of passenger and carrier are so radically different from those of a trespasser and assaulter that the evidence establishing the one would be a total variance from the other; and, if, as before suggested, Garrett was a trespasser and not a passenger upon the car at the time in question, then appellant totally failed to make out her case, and she was not entitled to recover, as stated in said instruction number 8. In our opinion the instruction was proper, and the court did not err in giving it.

IV.   It is next insisted by counsel for appellant that instruction numbered 10 given by the court of its on motion was erroneous.  In effect it told the jury that if Garrett was the aggressor and started the fight with defendant's conductor and during such fight was thrown or pushed off of the car, the defendant was not liable.

A similar instruction to the one under consideration came before this court in the case of O'Brien v. Railroad, 185 Mo. 263.   The only material difference between the facts of that case and this is that in the former it was conceded O'Brien was a passenger, and the evidence showed that the difficulty which occurred started on the car, but O'Brien was shot after he and the conductor reached the street; while in the case at bar there was a very serious question as to whether or not Garrett was a passenger.   There was absolutely no evidence of that fact, except the presumption to be drawn from the fact that he was upon the car at the time the trouble between him and the conductor began; and in this case the trouble occurred upon the car which resulted in Garrett being thrown therefrom. The facts of this case are much stronger in favor of respondent than they were in that case, and the mere fact that the shooting which occurred in that case took place on the street in pursuance of and as a  continuation of the trouble that began on the car does not differentiate it in principle from this case, where the trouble began on the car and from which Garrett was kicked or thrown.   In discussing the instruction in that case, this court, speaking through VALLIANT, J., on page 269, used this language:  "But whilst care on the part of the carrier for the safety and kind treatment of the passenger is required, yet so also is required care on the part of the passenger for his own safety and decent behavior.   If the passenger assaults the conductor, the latter has a right to defend himself, and if

in a personal combat between the passenger and the conductor, brought on by the passenger's wrongful assault, the latter is injured, the carrier is not liable. If, as the defendant's evidence tended to prove, O'Brien struck the conductor and then seized him and dragged him off the car to the sidewalk, it was then an affair between man and man and the defendant was not liable for what happened on the sidewalk.''

That case again came before this court, and is reported in the 212 Mo. 59. On the latter appeal the correctness of the former rulings was challenged, and after a careful reconsideration of the questions involved, this court affirmed those rulings. While the published report of the case through some oversight does not disclose the fact, yet the case was transferred to Court in Banc on the dissent of VALLIANT, J., who dissented as to a question of evidence which was not involved in the former appeal. The Court in Banc adopted the divisional opinion and thereby affirmed the former opinion also. That being true, we must set this question at rest and rule this objection against appellant.

V. It is finally insisted by counsel for appellant that instruction numbered 12 given by the court of its own motion was erroneous. It, in substance, told the jury that the burden was on the appellant to show that the act of the conductor in ejecting Garrett from the car was ''an act of criminal conduct.'' The statute under which this suit was brought uses the words ''criminal intent.'' [Sec. 2864, R. S. 1899.] Counsel for appellant criticizes this instruction because, as they say, there is a vast difference in doing a thing with criminal intent and simply intending to do that thing. Clearly, that is true, but before a recovery can be had under that section, not only must the intent exist but the criminal conduct must follow which resulted in the injury. There is no merit in this contention.

Finding no error in the record, the judgment is affirmed.

All concur, except as to the remarks made regarding the Masterson Case, in which the other judges do not concur.