### 9287

### ADAMS v. SOUTHERN RY. CO.

(87 S. E. 1007.)

1. CARRIERS—CARRIAGE OF PASSENGERS—TICKETS.—A passenger who loses his ticket, while entitled to a reasonable time to find it, must, in event of failure, pay cash fare or leave the train; and proof that he had checked his package and lost his ticket will not preclude the carrier from expelling him for nonpayment of fare and failure to produce a ticket.

2. CARRIERS—CARRIAGE OF PASSENGERS—EXPULSION.—Though a passenger, unable to produce his ticket and failing to pay his fare, may be expelled from the train, the carrier is liable for its servant's use of unnecessary force or abusive language.

3. CARRIERS — CARRIAGE OF PASSENGERS — ACTIONS — JURY QUESTION. — Whether the servants of a carrier, in expelling a passenger from a train, used language alleged, and whether it· was abusive, *held* for the jury.

Before DeVore, J., Greenville, April, 1915.    Reversed.

Action by J. W. Adams against the Southern Railway Company. From a judgment for plaintiff, defendant appeals. ·

*Messrs. Cothran, Dean & Cothran,* for appellant, cite: *As to regulation as to production of ticket:* 2 Hutch. Carriers, sec. 1036; 31 Ill. App. 435; 34 S. W. 852; 115 S. W. 459; 34 Atl. 11; 78 S. W. 470; 47 S. E. 206; 33 S. E. 255; 152 Fed. 608; 58 So. 963. *Distinguishes:* 99 S. C. 397. *Trespasser:* 80 S. E. 530. *Charge:* 88 S. C. 421; 97 S. C. 153.

*Mr. J. J. McSwain,* for respondent, cites: 99 S. C. 397; 101 S. C. 532.

February 29, 1916.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The plaintiff bought a ticket at Greenville, S. C., for· Gastonia, N. C. He checked his baggage and entered the train at Greenville for Gastonia. Just after the train left Greenville, the ticket collector came to him and asked for his ticket. The plaintiff told the ticket collector that he could not find his ticket. The collector went on through the car, and told the plaintiff to look carefully for it, and he would come back for it later. When the ticket collector returned, the plaintiff told him that he had lost his ticket. The collector then took the plaintiff to the conductor, who told the plaintiff he would have to produce the ticket, pay the cash fare, or get off. The plaintiff said he knew he would have to get off, as he had neither ticket nor money. The plaintiff testified that he showed the ticket collector his baggage check, and told him that, if he had not had a ticket, he could not have checked his baggage; that the ticket collector said, "There are enough dead beats now." The defendant's witnesses denied the exhibition of the baggage

check and the language concerning "dead beats." After the plaintiff was put off the train, he found his ticket, which was in his pocket, and had been overlooked.

This action was brought for the insulting language and the unlawful expulsion from the cars. At the close of the plaintiff's testimony the defendant moved for a nonsuit on the whole case. There were two questions in this case: (1) Did the defendant have the right to eject the plaintiff? (2) If it had the right to eject him, did it have the right to eject him as a "dead beat?"

1. Did the defendant have the right to eject the plaintiff? It did. The presiding Judge charged the jury that the carrier must heed the reasonable explanations of the passenger, and left it to the jury to say whether the explanation given was reasonable. The great weight of authority holds that, when a passenger loses his ticket, he is entitled to a reasonable time to find it, and, failing to find it, he must pay cash fare or get off the train. The reason is that it is in accord with a reasonable rule and a necessary rule. If this were not the rule, one ticket would always do for two. The passenger who bought the ticket could not be put off, because he had paid his fare. The passenger who had the ticket could not be refused transportation, because he had conclusive evidence, and the only evidence available to the passenger, that he had paid his fare. It would not even be necessary to show collusion, or that there should be collusion, because the passenger, after he had bought and paid for his ticket, and checked his baggage on it, might have dropped it, and another could have found it.

This is not in conflict with the Smith case, 88 S. C. 421, 70 S. E. 1057, 34 L. R. A. (N. S.) 708, nor the Teddars case, 97 S. C. 153, 81 S. E. 474. In both of those cases the agent of the defendant had made a mistake in giving the wrong ticket. Here there was no mistake or fault of any sort on the part of the agent of the defendant. The

complaint alleges that the plaintiff was unnerved by the conduct and words of the ticket collector of the defendant; but the plaintiff said he was unnerved by the loss of his ticket (his own fault), and not by anything said to him by the officials of the train. This is not in conflict with the Williams case, 99 S. C. 397, 83 S. E. 604. In that case the plaintiff was ejected before she had time to find her ticket. In this case no further time was demanded, and so far as the record shows no further time was desired. The explanation was not, as a matter of law, a reasonable explanation, and that question should not have been submitted to a jury. The bare fact that a ticket is lost is not a reasonable explanation.

2. If it had the right to eject him, did it have the right to eject him as a "dead beat?" That raises the question: Was he so ejected? It was the province of the jury to determine the facts. Did the ticket collector use the language ascribed to him; and, if so, what, under all the circumstances, did the language mean? A passenger may have the right to ride. He must show his right by competent evidence. If he cannot show it, he must pay the cash fare or get off. If he does not get off, he may be put off without abusive language. Was abusive language used to him? If he was put off with unnecessary force, or was subjected to abusive language, the defendant is liable. No unnecessary force is in evidence, but abusive language is. Was it used? Let the jury say.

The judgment is reversed.