166 So. 50

### BIRMINGHAM ELECTRIC CO. v. MAZE.
### 6 Div. 908.

Supreme Court of Alabama.
Feb. 27, 1936.

Ross, Bumgardner, Ross & Ross, of Bessemer, for appellee.

Huey, Welch & Stone, of Bessemer, for appellant.

GARDNER, Justice.

Count 2, upon which, for plaintiff, the case was tried, sought damages suffered by her as a passenger on defendant's car, and was rested upon the theory of relationship of carrier and passenger.

Defendant insists that at the time and place complained of that relationship did not exist, and the affirmative charge should have been given in its behalf. We conclude the undisputed proof supports this contention.

Plaintiff, with her grandchild, boarded defendant's car one summer afternoon at Brighton, only a few miles from Bessemer; the latter being their point of destination. The child was over five years of age, and was undisputedly due to pay fare under the rules of defendant company, duly approved by the Public Service Commission. Plaintiff had a ticket for herself only, and no funds with which to pay fare for the child. The conductor collected her ticket and walked to the end of the car, and then returned to inquire as to the age of the child which was sitting next to the car window. Being informed the child was five years of age, the conductor requested fare. The following, according to plaintiff's testimony, then occurred: "I told him I never had paid fare on her; he said, well I would have to pay it then. I told him I didn't know so much about that, that I didn't have but three pennies, and he could have them if he wanted them. And he said well, you will have to get off: I said I don't know so much about that. And then he told me if I didn't get off he would slap me off. He stopped the car at the A. B. and A. crossing, and when I got up he handed me a car ticket. I said I don't know your name, but I will get your cap number and it was No. 1159. * * * The conductor did not touch me. He stopped the car and I got off and that

was all there was to it. I don't think either he or I was talking loud enough for the surrounding passengers to hear. He just spoke in a nice common conversation. He said it impudently and caused me humiliation and embarrassment, and liked to have nearly killed me. I had no friends on the car, and I can't know of any one who heard what he said."

■ It is generally conceded that the relation of carrier and passenger is dependent on the existence of a contract of carriage, express or implied (10 Corpus Juris, 611; 4 R.C.L. p. 1002), and was so expressed in Broyles v. Central of Georgia R. Co., 166 Ala. 616, 52 So. 81, 86, 139 Am.St.Rep. 50, where is the observation: "There can be no dispute, and it has been universally so held, that to create this relation there must be a contract to that effect either express or implied."

■ Plaintiff was in charge of her grandchild, and, as she entered the car, the law implied a contract on her part to pay the child's fare. Upon her refusal to do so, defendant had the lawful right to eject them both from the train. That this is the generally accepted rule does not here appear to be seriously controverted. 10 Corpus Juris, 733; Braun v. Northern Pac. R. Co., 79 Minn. 404, 82 N.W. 675, 984, 49 L.R.A. 319, 79 Am.St.Rep. 497; Lake Shore, etc., R. Co. v. Orndorff, 55 Ohio St. 589, 45 N.E. 447, 38 L.R.A. 140, 60 Am.St.Rep. 716. As said by the court in Fleck v. Missouri, K. & T. R. Co. (Tex.Civ.App.) 191 S.W. 386, 390, speaking of refusal of the mother to pay fare for her son: "Her refusal to pay fare for her son justified the conductor and auditor in ejecting her from the train. The boy was taken on the train by her, and was in her care and charge. The railroad company could not lawfully transport him without charge, and neither could it put him off the train and leave him with no one to care for him." Many other authorities are found cited in the note to Carpenter v. Trinity & Brazos Valley R. Co., 1 A.L.R. 1449, and to 10 Corpus Juris, 733, and need not here be further enumerated.

But plaintiff insists that she boarded the car in good faith, and as such became a passenger with all the rights and privileges pertaining to that relationship, citing Central of Georgia R. Co. v. Bagley, 173 Ala. 611, 55 So. 894, where there was a violation of a regulation as to a validation of the plaintiff's ticket and wherein the right of re-

covery was rested upon the improper ejectment from the train, in that she was required to disembark at a highly dangerous place.

[3] Conceding, without deciding, that, under the circumstances above outlined, and the rule of presumption obtaining (2 Hutchinson on Carriers, §§ 997, 998; 4 R.C.L. pp. 1003, 1004), plaintiff presumptively became a passenger upon entering the car, yet that rule of presumption is not conclusive, and is rebutted upon her refusal to pay the child's fare upon demand. 2 Hutchinson on Carriers, § 998. The following from 4 R.C. L. p. 1005: "When, however, a person refuses to pay the proper fare when the same is demanded, he is not lawfully in the vehicle of the carrier, and is not entitled to the rights and privileges of a passenger," is amply supported by the cited cases. Among those here more nearly applicable are: Higley v. Gilmer, 3 Mont. 90, 35 Am.Rep. 450; St. Louis S. W. Rwy. Co. v. Harper, 69 Ark. 186, 61 S.W. 911, 53 L.R.A. 220, 86 Am.St.Rep. 190; Memphis, etc., R. Co. v. Benson, 85 Tenn. 627, 4 S.W. 5, 4 Am.St. Rep. 776; Lillis v. St. Louis, etc., R. Co., 64 Mo. 464, 27 Am.Rep. 255; Garrett v. St. Louis Transit Co., 219 Mo. 65, 118 S.W. 68, 16 Ann.Cas. 678.

The case of Higley v. Gilmer, supra, contains a full discussion of the question, and is rested upon the fundamental principle that the relationship of carrier and passenger is founded on contract, express or implied. As said by the court in its reasoning: "Before a person can become a passenger, he must offer to become one, and this offer must be accepted by the carrier, and unless the fare is waived it must be paid or tendered. * * * Now if a person purposes to become a passenger and yet refuses to pay his fare, whereupon the carrier refuses to undertake to carry him, how can there be said to be a contract of carriage between them? There is no mutuality in such a contract. The minds of the parties do not meet." The conclusion was that upon his refusal to pay the fare plaintiff was not rightfully in the conveyance, and the relationship of carrier and passenger ceased to exist.

The concluding language of the opinion in Broyles v. Central of Georgia R. Co., supra, lends support to this conclusion, as follows: "Ordinarily, when a person boards a train with money sufficient to pay his fare, it will be presumed that he intends to pay his fare until his fare is demanded,

unless his conduct should be such as to show that he was trying to evade demand being made on him by secreting himself or otherwise; but after demand is made, and he has the opportunity of paying, and he fails to do so, the presumption ceases unless some good excuse is shown for not then paying."

[4] We are therefore of the opinion that both under the authorities and sound reasoning as well the relationship of carrier and passenger did not exist upon refusal of plaintiff to pay fare for the child upon demand.

[5] Plaintiff suggests that the child was due to be transported without fare by reason of established custom. But, wholly aside from the fact that defendant carrier is a public service corporation, and subject to rules and regulations of the Public Service Commission, and under duty to show no favoritism or discrimination, there is no proof of any such custom. The mere statement of plaintiff that she had never paid fare for the child is so clearly insufficient to support such contention as to require no discussion. 2 Hutchinson on Carriers, § 1080.

The cases of Ball v. Mobile Light & Power Co., 146 Ala. 309, 39 So. 584, 119 Am.St.Rep. 32, 9 Ann.Cas. 962, and Southern R. Co. v. Herron, 12 Ala.App. 415, 68 So. 551, cited by plaintiff, are readily distinguishable on the facts, and are here inapplicable.

[6] Like observation is applicable to the further suggestion that the conductor waived the payment when he first passed the child without demanding the fare, though he merely went to the end of the car and returned to make inquiry as to her age.

By what has been said, however, it is not intended to indicate plaintiff would be without remedy.

[7] In exercising the right of expulsion, unnecessary force must not be used, nor must it be exercised at such time, place, and under such circumstances that serious injury will probably and naturally result. But, subject to these limitations and restrictions, the time, place, and circumstances are left in the discretion and judgment of the conductor. Louisville & Nashville R. Co. v. Johnson, 92 Ala. 204, 9 So. 269, 25 Am.St.Rep. 35.

[8] There was no pretense that the place where plaintiff disembarked was in any manner dangerous or that there was anything improper in the manner of expul-

sion, except the alleged threat by the conductor that he would "slap her off." But the authorities hold that the carrier may, under some circumstances, be held to liability if the employee makes use of abusive, insulting, or threatening language (10 Corpus Juris, 758; Adams v. Southern Rwy. Co., 103 S.C. 327, 87 S.E. 1007, L.R.A.1916D, 1183; Boling v. St. Louis & S. F. R. Co., 189 Mo. 219, 88 S.W. 35; Birmingham Ry., Light & P. Co. v. Glenn, 179 Ala. 263, 60 So. 111; Louisville & Nashville R. Co. v. Robinson, 213 Ala. 522, 105 So. 874; note, 1 A.L.R. 1454), based upon the theory that the unnecessary use of such language constitutes an expulsion in an improper manner.

But any such right of action is not rested upon relationship of carrier and passenger. It arises out of a duty imposed by law that the carrier, in exercising its right of expulsion, shall not do so in an improper manner. In speaking of a right of action of this character, our court in Louisville & Nashville R. Co. v. Johnson, 92 Ala. 204, 9 So. 269, 270, 25 Am.St.Rep. 35, observed that: "No right of recovery is or can be claimed under the original complaint, which proceeds on the theory that plaintiff's intestate was a passenger." And, as further illustrative, it may be noted that in Central of Georgia Rwy. Co. v. Bagley, supra, 173 Ala. 611, at page 614, 55 So. 894, counsel for plaintiff took the precaution to strike from the complaint any reference to plaintiff "as defendant's passenger."

A full discussion of this question is found in Garrett v. St. Louis Transit Co., supra 219 Mo. 65, 118 S.W. 68, 16 Ann.Cas. 678, at page 687, wherein the action of the trial court in giving for defendant charge 8, which in the alternative instructed the jury, if the conductor requested payment of the fare and it was refused, then plaintiff was not a passenger in contemplation of law, was approved.

It appears that plaintiff proceeded with the trial upon the assumption of the relationship of carrier and passenger continued, and was uninterrupted, and proof was had as to the walk by plaintiff and the child of a mile or more from the place of expulsion back to the starting point, in the extreme heat of the day, and the delay of plaintiff in reaching her destination.

But all of this was beyond the scope of injury based upon a right of action for expulsion in an improper manner. This for the reason there was nothing in the expulsion of which plaintiff could lawfully complain, except the alleged abusive language. Based, therefore, upon a complaint seeking recovery for expulsion in an improper manner, the proof would be confined to the language used, and this alone would constitute plaintiff's right to recovery.

Of course, as to whether or not the alleged abusive language was used, the proof is conflicting and presents a jury question, but the discussion here is based upon plaintiff's theory of the case in connection with the right of defendant to have given the affirmative charge in its behalf. The complaint, being rested upon the relationship of passenger and carrier, was not supported by the proof, and defendant was due the affirmative charge as to count 2 as duly requested.

For this error the judgment is reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.