THE STATE v. McGEE, Appellant.

**Division Two, May 16, 1905.**

1. **ACCOMPLICE: Sufficiency of Evidence.** Where there is substantial evidence to show that the defendant was an accomplice of the thief and was acting in concert with him at the time and that issue is submitted to the jury in a correct and fair instruction, the court will not decide that there was not sufficient evidence to establish his guilt.

2. ———: **Evidence of Prior Association.** As the prosecuting witness was descending the steps of a car beginning to move out of the station, he was met by defendant and two others who crowded against him and one of them took from his necktie a valuable pin. *Held,* that it was competent, in the prosecution of defendant as an accomplice, to show that he was previously an intimate associate of the robber, and that the three had stated to officers three or four days before that they were stopping together at a certain hotel.

3. **WITNESSES: Detectives: Credibility.** Defendant's character is not assailed by the fact that witnesses against him are detectives, nor are detectives and police officers incompetent witnesses. The credibility of witnesses is for the determination of the jury.

4. **VERDICT: Robbery in Nighttime: Sufficiently Responsive.** A verdict reciting that "we find the defendant guilty of larceny from the person in the nighttime as charged in the information," is sufficiently responsive to the issues made by the information which charged defendant with larceny from the person of Harlow B. Spencer in the nighttime.

Vol 188 mo—26

State v. McGee.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor,* Judge.

AFFIRMED.

*William E. Fish* for appellant.

(1)   There need be no citation of authority for the proposition that every element of a crime must be sustained by substantial proof which convinces beyond a reasonable doubt.   This defendant must have had knowledge of his companion's criminal act, and must have aided therein, or have been present ready to aid therein, before guilt can be imputed to him; and there is not satisfactory evidence that this defendant had such knowledge; indeed, it seems to us to be quite clear that he could not have so known.  He could not possibly have anticipated meeting Spencer getting off the car as they got on, or that he had the jewelry on his person; and the act of taking it, as described by the brakeman, who stood on the platform, was so impulsive and quick that this defendant, who was behind Taylor, with McGraw between him and Taylor, and being crowded up by the conductor behind him, could hardly have anticipated, or have known, of the intention of Taylor, whose formation of criminal intent and execution thereof, was simultaneous and quick as a flash.   The jury convicted this plaintiff on general principles, not because they believed him to be guilty of this particular theft, but because they believed him to be in the company of a thief, and they thought somebody should be punished.   It is a case appealing particularly to this court, which should not permit a judgment to stand which was induced by such motives.  An accessory after the fact, within the meaning of section 3945, Revised Statutes 1889, is not an accomplice, and cannot be charged or punished as the principal

offendef. Nor can he be indicted jointly with the principal for the principal's offense. State v. Umble, 115 Mo. 452. To make the defendant responsible for the acts of the other party they must have a common motive and a common design. State v. Hayes, 105 Mo. 76. An accomplice is a person who knowingly, voluntarily, and with common intent with the principal offender, unites in the commission of the crime. State v. Kuhlman, 152 Mo. 100. The State ought not to ask a conviction unless it can be obtained fairly, and upon testimony that will stand the severest tests known to the law. State v. Nettles, 153 Mo. 464. (2) The evidence of St. Louis detectives, Killian and Cordell, should never have been allowed to go before the jury. The testimony of both officers is that on the 17th day of January they saw and watched these men, Taylor and McGee, in a crowded street car; that when these men left the car they, the detectives, followed and watched them, and repeated a conversation in which they claimed they were stopping in a hotel in East St. Louis. I trust that it can be readily seen by this court that this evidence was fatal to the defendant and was illegal and incompetent testimony. (3) The verdict in the second trial of this cause will not sustain a judgment. The verdict should have read, as this court stated: "We, the jury, find the defendant, John McGee, guilty of larceny from the person of Harlow B. Spencer in the nighttime, as charged in the information." State v. Rowe, 142 Mo. 442; State v. Jones, 168 Mo. 398; State v. Wehn, 10 Mo. 8; Clark's Crim. Proc., p. 485; 1 Bish. New Crim. Proc., sec. 1005; Whart. Crim. Pl. and Proc. (9 Ed.), sec. 756.

*Herbert S. Hadley,* Attorney-General, and *John Kennish,* Assistant Attorney-General, for the State.

(1) The facts in evidence as to the actions, conduct and statements of these men before, at the time

of, and after the commission of the larceny charged, make a case, not only sufficient to go to the jury, but lead irresistibly to the conclusion that the defendant was acting in concert with Scullin throughout, and is equally guilty of the crime. "If there is substantial evidence tending to show defendant's guilt, the sufficiency of the evidence to support the verdict will not be considered by the appellate court." State v. DeWitt, 152 Mo. 76; State v. Williams, 149 Mo. 496. (2) In the prosecution of crime the State must of necessity rely in many cases upon the testimony of this class of witnesses, and it would not do to say that, because a detective's evidence showed a previous acquaintanceship with the person on trial, that would amount to placing the defendant's character in issue and, therefore, error. (3) The verdict is sufficient. The cases cited by appellant do not sustain his position. In each of the cases cited the defendant was charged with the offense of burglary and grand larceny, and the jury returned a general verdict. The court held such verdict bad, because indefinite and uncertain. There is nothing indefinite or uncertain in the verdict in this case. There is but one count in the information, and but one offense charged, and the verdict is clearly responsive to the charge in that it finds "the defendant, John McGee, guilty of larceny from the person in the nighttime, as charged in the information," etc. The law does not require in a verdict all the elements of the offense as set forth in the charge. State v. McGee and McGraw, 181 Mo. 312. The law is well settled in this State that when there is but one count in the indictment and but one offense charged, a general verdict is sufficient. The only exception to this is the statutory one in case of a conviction of a lower degree than the offense charged. Kelley's Criminal Law, pp. 262-3; State v. Berning, 91 Mo. 82; State v. Elvins, 101 Mo. 243; State v. Steptoe, 65 Mo. 640; State v. Robb, 90 Mo. 30.

GANTT, J.—This is the second appeal in this
cause. The first will be found reported in State v. Mc-
Gee and McGraw, 181 Mo. 312. The former judgment
was reversed because the information was not verified
as required by the statutes of this State. After the
cause was reversed, the information was duly verified
by Mr. Harlow B. Spencer, prosecuting witness, and
the defendant was again tried and convicted. From
this second conviction he prosecutes this appeal. It
may be properly added that, after the reversal, there
was a severance, and the defendant was separately
tried.

Upon the trial the evidence for the State tended
to prove the following facts:

On the night of the 21st of January, 1903, Harlow
B. Spencer, the prosecuting witness in this case, accom-
panied a lady to Union Station in the city of St. Louis,
where the lady was to take passage for Chicago, on
the Chicago & Alton railroad train, due to leave St.
Louis at 11:40 p. m. They arrived at the train about
fifteen minutes before time for its departure. The
train was standing in the train shed, and a platform or
walk extended along the train for the accommodation
of the passengers in getting aboard or leaving trains.

The train consisted of two sleeping cars, a chair
car, and the evidence does not disclose how many other
passenger cars, if any, were in the train. The last car
was a standard sleeping car, the next in front was a
compartment sleeping car, and the chair car was im-
mediately in front of the compartment car. There was
a vestibule connection between the chair car and the
sleeping car next in the rear, and at the time in ques-
tion there was but one vestibule door and steps between
the sleeping car and chair car, open for passengers to
get off or on, and that was the left hand door at the
rear end of the chair car. Mr. Spencer boarded the
train with the lady, entering the compartment sleep-
ing car, and remaining there until the train, on sched-

ule time, began moving away. He then hastened forward to get off. When he reached the steps at the rear end of the chair car, the train began moving at a speed of an ordinary walk. He found the passage way of the steps blocked by three men, one of whom being in the lead and about on the top step, roughly jostled against Spencer. The other two stood further down and fronted up the steps, so that for a short time, crowding against Spencer, they blocked the passage way, and Spencer was unable to get by; but finally turning sideways, they let Spencer pass and he got off the train. Within a few minutes after alighting from the train he missed his scarfpin, valued at $190, which he had worn sticking in his necktie. He immediately telegraphed ahead to the lady on the train about losing his scarfpin and asked that she have the compartment searched therefor.

The three men on the steps, as Spencer was leaving the train, were afterwards identified as John Scullin, who was the man farthest up the steps, Edward McGraw, and the defendant. The conductor, who was on the lower step as Spencer came out to get off, saw Scullin make a motion with his left hand over Spencer's scarf. The passenger flagman, Downing, standing on the trap door of the platform across from the steps where Spencer was trying to get off, saw Scullin put his arm against Spencer and take the pin out of Spencer's tie. Downing, within a few minutes, reported the fact to the conductor, and the latter telegraphed the occurrence to the police at Chicago.

Scullin, McGraw and the defendant entered the chair car and after talking together, took seats, one near the front, one near the middle and the other near the rear. The train was due at Chicago at 8:10 next morning. At Brighton, a station about five miles out of Chicago, the detectives boarded the train.

Halstead Station is a stopping place in the city of Chicago, about two or three miles from the Union

Station.   Scullin and the defendant were seen talking together between Brighton and Halstead stations in the morning.   The three men went to the door of the car to get off at Halstead Station.   They were then pointed out to the detectives who took them in charge.

While in the custody of the detectives, the defendant and McGraw each told them where they could find the pin, stated that it would be found stuck in a newspaper about three seats from the rear door of the car. After search had been made for the pin and it had not been found, defendant and McGraw, when informed of the failure to find it, asked witness, Cain, if he wouldn't take $125 and hand it back to the sucker, meaning Spencer.

It was in evidence that Scullin and the defendant were seen together at different places in St. Louis a few days before this occurrence, and that defendant stated he and Scullin were boarding at a hotel in East St. Louis.   One of these three men, about twenty minutes before the train started, asked the conductor what he could do towards getting him and one or two companions to Chicago.   When Spencer was trying to get off the train, the defendant and McGee blocked the steps, crowded against Spencer until Scullin had secured the pin, then, and not until then, they turned sideways and let Spencer pass.

At the close of the State's evidence, the defendant asked a peremptory instruction directing the jury to acquit.   This instruction was refused by the court, and defendant excepted.

No evidence was offered on the part of the defendant.

The errors complained of by the appellant in his motion for new trial and in arrest and in his brief are: (1) The insufficiency of the evidence to sustain the verdict; (2) the admission of illegal evidence over defendant's objection; and (3) the insufficiency of the verdict to sustain the judgment.

I. The first contention of the defendant is that the evidence is insufficient to support the verdict. We cannot assent to this. By reference to the statement it will be seen that the defendant and Scullin, *alias* Kid Taylor, who was indicted with the defendant and convicted of this same larceny, were acquaintances and associates; that for several days before the commission of the offense charged, they were together in St. Louis, and the defendant stated at that time to an officer that he and Scullin and McGraw were staying at a hotel in East St. Louis. The conductor on the Chicago & Alton train on which Mr. Spencer's diamond pin was stolen testified that about twenty minutes before the train left St. Louis McGraw asked the conductor "what the conductor would do toward getting him and one or two companions to Chicago," and then walked back towards the station. When the train was leaving, these three men, Scullin, McGraw and the defendant, came down the platform together and got on the steps together to board the train, and when Mr. Spencer attempted to get down the steps these three men blocked his way, and in his effort to get by them his attention was distracted, and Scullin reached over his shoulder and removed his pin from his neck tie. Mr. Spencer testified "they were apparently moving around me in a circle, crowding around me." "They pushed me from one side to the other." "I was pushing to get down the steps. They were apparently making no effort to get up the steps." "They were trying to block the way more than anything else." Downing, the flagman, was standing on the trapdoor on the platform across from the steps where Spencer was trying to get off, and he saw Scullin put his arm against Spencer and take the pin out of Spencer's tie. Downing within a few minutes reported the theft to the conductor of the train and the latter telegraphed the occurrence to the police of Chicago. Immediately after this these three men were seen in the rear end of the chair car in consultation and

talking together; they then took seats in different places in the car. Scullin and the defendant were seen in conversation just prior to their attempt to leave the train together at the last stop before arriving at the Union Station at Chicago. Both the defendant and McGraw told the Chicago officer, Cain, that they had stuck the pin in a newspaper, and that it could be found in a newspaper about three seats from the rear door of the car; after search had been made for the pin, and it had not been found, defendant and McGraw, when informed of the failure to find it, asked officer Cain if he would not take $125 and hand it back to the sucker, meaning Spencer. The evidence indicated a close personal acquaintance between these three defendants and showed them as intimately associated. There was evidence from which the jury could well find that they were acting jointly in crowding around Spencer so as to render it easy for one of their number to get his pin; it also discloses a personal knowledge on the part of this defendant of the theft of the pin, and of where it had been hidden when they discovered the two Chicago detectives on the train as they neared Halstead Station in Chicago. It shows that all three of them were attempting to get off at that station when they were taken in charge by the officer. After their arrest both this defendant and McGraw said they had stuck the pin in a newspaper.

These and other circumstances in the evidence afford a substantial basis for the finding of the jury that these three defendants were jointly implicated in the commission of the larceny charged in the information, and that this defendant was aiding, assisting and abetting Scullin in stealing Spencer's pin. This cause was submitted to the jury in an exceedingly fair and favorable instruction for the defendant, and the rule is well settled in this State that if there is substantial evidence tending to show defendant's guilt the sufficiency of the testimony to support the verdict will not be

weighed by this court. [State v. DeWitt, 152 Mo. 76; State v. Williams, 149 Mo. 496.]

Counsel for the defendant conceded that the crime was well and fully proven as to Scullin, *alias* Kid Taylor, and we think there was ample evidence that this defendant was acting in concert with Taylor. The testimony of officer Cain was corroborated by that of witness O'Connell, who testified that this defendant made the statement in Chicago that the pin was stuck in a paper and thrown about three seats from the end of the chair car, that it could be found there if we sent a man out for it, and that this statement was voluntarily made without any promise of reward of any kind.

II.    But it is insisted that it was error to admit the evidence of officers Killian and Cordell to the effect that on the 17th of January, some three or four days before the theft in question, they saw and watched Scullin and this defendant together in the city of St. Louis in the street car and on the streets together, and that they had a conversation with them in which they told the officers that they were stopping together in a hotel in East St. Louis. We think it was perfectly competent to show that this defendant was an intimate associate and companion of Scullin, the defendant, who stole Mr. Spencer's pin from his scarf. In the absence of this proof counsel for the defendant might well have argued to the jury the utter improbability of two strangers unexpectedly meeting as they entered the railroad car and in the hurry and excitement of getting up the steps to get aboard, jointly participating in the theft of a scarf pin from a man trying to pass from the train, but when, by the evidence, it is shown that they are intimate acquaintances and companions the significance of their action assumes an entirely different hue and complexion.

This evidence was competent beyond all question. The fact that these witnesses, Killian and Cordell, were police officers and detectives certainly in no manner af-

fected their competency to testify. The weight and credibility of their evidence was entirely for the jury, and it will not do to say that, merely because the State calls two detectives who had a previous acquaintance with the persons on trial, therefore, the defendant's character was assailed.

III. Lastly it is insisted that the verdict is too indefinite and uncertain to sustain the sentence. The verdict is in these words:

"State of Missouri vs. John McGee.

"On indictment from larceny from the person in the nighttime. We, the jury in the above entitled cause, find the defendant guilty of larceny from the person in the nighttime as charged in the information, and assess the punishment at imprisonment in the penitentiary for seven years.　　　　　CHRISTIAN YOUNG,

"Foreman."

When this cause was here on the former appeal we noted that a verdict of "guilty of larceny from *a person* in the nighttime as charged in the indictment," was not responsive to the information which charged the larceny from "*the person* of S. in the nighttime," and said that the court should have required the jury to correct their verdict so as to conform to the only issue tended them, to-wit: whether the defendants were guilty of larceny from the person of Harlow B. Spencer in the nighttime. Since then in the case of State against DeWitt, 186 Mo. 61, we have had occasion to discuss the essentials of the verdict. In that case we said if the verdict had been that the jury found the defendant guilty as charged therein it would have been a good general verdict and sufficient.

In this case there was but one charge, to-wit, that of larceny from the person of Mr. Spencer in the night-time. The jury have responded to that issue and found that the defendant was guilty of larceny from the person in the nighttime as charged in the information, and

in that way have obviated the error in the form of the verdict.

We have no doubt whatever of the sufficiency of the verdict.  [State v. Berning, 91 Mo. 82; State v. Elvins, 101 Mo. 243; State v. Steptoe, 65 Mo. 640; State v. Robb, 90 Mo. 30.]

We have thus responded to all the contentions of the learned counsel for the defendant, and in our opinion they fail to show any reversible error in the action of the circuit court.  Two juries have found the defendant guilty on this charge and we think the evidence sufficient to sustain the verdict.

The judgment is accordingly affirmed.  *Fox, J.,* concurs; *Burgess, P. J.,* absent.