THE STATE v. RUTH CONWAY and MARIE SMITH, alias MARIE HENSLEE, Appellants.—154 S. W. (2d) 128.

Division Two, September 25, 1941.

*Homer D. Wampler, Jr.,* and *Lincoln & Lincoln* for appellants.

*Roy McKittrick,* Attorney General, and *Olliver W. Nolen,* Assistant Attorney General, for respondent.

BARRETT, C.—Marie Smith and Ruth Conway appeal from a conviction and sentence of two years' imprisonment for grand larceny.

Briefly, the State's evidence was that Paul Wallman, a traveling salesman, was in Springfield on March 18, 1940, staying at the Seville Hotel. About ten o'clock in the evening he was walking around the streets of the business section and was "picked up" by the appellants

who drove him around town in a Chevrolet coupe. After a while the three of them went to a tap room on Commercial Street and had at least one drink. Someone suggested that they go to a tourist cabin where they could have a radio. Wallman purchased a half pint of whiskey and they drove out on Highway 66 to Lurvey's. While he rented a cabin and made arrangements for some coca cola and ice the women parked the car in front of the cabins.

They mixed some drinks and played the radio. Wallman hung his coat, with his wallet containing sixty-two dollars in bills in his inside pocket, on the back of a chair. Soon, one of the women removed her dress and he took his shirt off. He went to the bathroom and as he came out Marie Smith was going out the front door. He asked her where she was going and she stated that she would be back in a minute. He then announced that if the party was breaking up they would all go. He put on his coat and immediately missed his wallet.

As Marie Smith got in the car he demanded his wallet and she informed him that she did not have it. As he stood outside the car she put the key in the ignition and he grabbed it and started for the cabin office. He looked back and Ruth Conway was running from the cabin towards the car. One of them yelled asking him to come back and said, "We will give you your wallet," but as he approached the car they drove away..

He looked around the cabin for his wallet but could not find it. In front of the cabin door he found a lady's shoe.

Wallman went to his hotel and then to the police station where he reported the occurrence. The car key, together with another key, was on a small chain attached to a cylinder. He gave these and the shoe to the police. The cylinder contained Ruth Conway's driver's license. The other key on the chain unlocked the front door to Marie Smith's home. The shoe fitted Ruth Conway but she denied ownership of it. A day or two afterwards the appellants took the Chevrolet coupe to the S & M Garage and had all the locks on it changed.

The appellants were arrested and made written statements to the police, in which they claimed that Wallman had approached them as they sat in their car and suggested that the three of them get drunk together; that they went to a tap room, but after a few drinks got into an argument as to whether or not the women were too drunk to drive and Wallman went after his own car and they did not see him again.

The appellants testified in circuit court and admitted that they were in the cabin with Wallman but denied that they had taken his wallet and money. They claimed that he had made unnatural advances to Marie Smith, causing them to leave the cabin, and that when he saw they were getting in the car he kicked Marie and forcibly took the keys from her. They admitted changing the locks

on the car but said they did so because Wallman had a set of keys and they were afraid he would later get the car. In explanation of their denial to the police that they had been in the cabin with Wallman Ruth said that she didn't want her estranged husband to know she had been in a cabin with a traveling salesman and Marie was afraid of a jealous lover.

The appellants assign as error the overruling of their demurrers, especially as to Ruth Conway, for the stated reason that the evidence as to her does not even rise to the dignity of circumstantial evidence. Some of the many assignments in their motion for new trial on this subject to the effect that the verdict is against the evidence and the law, etc., are not sufficient to preserve the questions for review by this court. [State v. Wright, 342 Mo. 58, 112 S. W. (2d) 571; Sec. 4125, R. S. Mo. 1939 (Laws Mo. 1939, p. 358).]

■ The assignment that the evidence as to Ruth Conway was purely speculative and did not even rise to the dignity of circumstantial evidence connecting her with the larceny may be sufficient. But, even so, a mere recital of the evidence demonstrates that the jury could reasonably find that the appellants were acting jointly; aiding, assisting and abetting one another, and that they were guilty of the larceny as charged. Even if the evidence may be construed to be wholly circumstantial the facts and circumstances are consistent with the defendants' guilt and inconsistent with their innocence and, therefore, ample to support their conviction. [State v. McGee, 188 Mo. 401, 87 S. W. 452; State v. Bresse, 326 Mo. 885, 33 S. W. (2d) 919; State v. Kelley (Mo.), 106 S. W. (2d) 486.]

■ It is claimed that the court erred in giving Instruction No. 1 for the reason that the information charges the defendants with stealing money belonging to Wallman while the instruction submits larceny from the person, which is a submission broader than the information and of a crime not charged in the information.

We think this objection more facetious than serious. The instruction says that if the jury find that the defendants "did steal, take and carry away from the witness, Paul Wallman, any sum of lawful money of the United States, amounting to $30.00 or more, and that the same was the property of Paul Wallman," etc., while the information charges that the defendants did "steal, take and carry away $62.00 . . . of the goods, chattels and personal property of one Paul Wallman," both of which substantially follow the wording of the larceny statute whether the theft be from the person or otherwise. [Secs. 4456, 4459, R. S. Mo. 1939.] The instruction, as a whole, is such as has been generally approved in this type of case. [State v. Reppley, 278 Mo. 333, 213 S. W. 477; State v. Wagner, 312 Mo. 124, 279 S. W. 30; State v. Martin (Mo.), 56 S. W. (2d) 137.]

■ It is also urged that the court's instruction on circumstantial evidence was prejudicially erroneous because it failed to charge "that

the circumstances proved must be consistent with each other, as well as consistent with the defendants having committed the act." Relying on State v. Moxley, 102 Mo. 374, 14 S. W. 969, they insist that the instruction should state that the facts proven must exclude "to a moral certainty every other reasonable hypothesis but that of guilt." In short, appellants seem to argue that unless a circumstantial evidence instruction contain *certain* terminology it is erroneous. State v. Moxley, supra, does not hold that certain definite words must be used in such an instruction. That was a homicide based solely on circumstantial evidence and the court not only did not give a circumstantial evidence instruction but refused what the court held to be an apt and proper one containing the vital element of proof "by facts and circumstances, all of which are consistent with each other and with his guilt, and absolutely inconsistent with any reasonable theory of innocence."

An instruction on circumstantial evidence should, *in substance,* advise the jury that "the circumstances proved must be consistent with each other, and with the hypothesis that the defendant is guilty, and inconsistent with the theory of his innocence and with every reasonable hypothesis, except that of guilt." [State v. Maggard, 250 Mo. l. c. 342, 157 S. W. l. c. 354; State v. David, 131 Mo. 380, 33 S. W. 28.] The instruction in the instant case, while not in the exact terminology of other instructions on the same subject, substantially and correctly defines the quantity and quality of circumstantial evidence necessary for a conviction by saying, ". . . they must not only be satisfied that all the circumstances proved are consistent with defendants having committed the act, but they must also be satisfied that the facts are such as to be inconsistent with any other reasonable conclusion than that the defendants are the guilty persons; and if the material facts necessary to constitute a chain of circumstances sufficient to authorize the jury in convicting the defendants under the other instructions herein are wanting in a single link in such chain, that is sufficient to raise a reasonable doubt and the jury should acquit the defendants."

Three of the appellants' assignments, based on the refusal of proffered testimony, may be considered together. During his cross-examination Wallman denied that he knew any women in Springfield, socially, and denied that he had ever made unnatural advances to Hazel Dodd or to any other woman. The appellants then offered in evidence two letters from Wallman to Hazel Dodd, both of which indicated an intimate relationship. They then offered to prove by Hazel Dodd that he had made unnatural proposals to her. The appellants' theory is that the rejected evidence was admissible for the purpose of impeaching the witness. Obviously, these matters had no bearing whatever on the guilt or innocence of the appellants and were, therefore, collateral. [State v. Murphy, 201 Mo. 691, 100 S. W.

414.] This assignment is appropriately disposed of by State v. Baublits, 324 Mo. 1. c. 1208, 27 S. W. (2d) 1. c. 1920: "The matter was collateral. The test of the materiality of the evidence is its competency if sought to be proved by the cross-examining party in establishing his case. This is not a case where the court denied the defendant the right to impeach by cross-examination the State's witness. That right obtained even upon matters immaterial. But, when that right has been accorded a defendant, he is bound by the answer of the witness, and he cannot impeach the witness as to collateral or immaterial matters by evidence *aliunde*."

Then, Johnnie Jones, the cabin attendant, after relating what he had observed of Wallman's action after renting the cabin was asked this question by the State: "Did he make any complaint to you about being robbed?" He answered, "Yes, sir." The appellants objected to the question and assign as error the admission of the statement for the reason that it was hearsay, a self-serving declaration not a part of the *res gestae* and prejudicial. It is true, as a general rule, that statements or declarations of the person injured by the crime are not admissible unless a part of the *res gestae* or unless they meet one of the recognized exceptions to the hearsay rule, such as dying declarations, admissions by the accused when made in his presence or for the purpose of impeachment. [State v. Blackburn, 273 Mo. 469, 201 S. W. 96; 22 C. J. S., sec. 740, pp. 1276-1277; 16 C. J., sec. 1269, p. 639.]

However, this statement, though made an hour after the occurrence, does not accuse the defendants or in any way connect them with the larceny. There was no dispute but that Wallman had been the victim of a larceny. Even the appellants did not deny the fact that someone had stolen his money—they only denied that they did it. And so, although such statements ▮ are not admissible unless they fall within one of the recognized rules of evidence, we do not believe the question and answer in this instance prejudicially harmful to the appellants. [State v. Sibley, 131 Mo. 519, 33 S. W. 167.]

As a matter of fact, the only serious doubt on this appeal is as to the appellants' assignment that the court erred in permitting the prosecuting attorney to show, in cross-examining Marie Smith, that she had not testified at their preliminary hearing and to argue to the jury that neither of them had testified at the preliminary. There are no Missouri criminal cases passing on the point and no cases bearing directly on the subject are cited by either the State or the appellants. The Attorney General does state that prosecuting attorneys should refrain from commenting on a defendant's failure to testify at the preliminary examination even though not positively prohibited by the statute. The question is presented to this court as being whether or not it was error for the prosecuting attorney to comment on the defendants' failure to testify at the preliminary.

We are of the opinion that the problem is much narrower than that and is whether or not the defendants by testifying in their own behalf in circuit court waived the constitutional protection, "That no person shall be compelled to testify against himself in a criminal cause," (Const. Mo., Art. II, Sec. 23) and the statutory protection to a defendant that if he do not testify, "on the trial of the case, it shall not be construed to affect the innocence or guilt of the accused, nor shall the same raise any presumption of guilt, *nor be referred to by any attorney in the case, nor be considered by the court or jury before whom the trial takes place.*" [Sec. 4082, R. S. Mo. 1939.]

The constitutional provision against self-incrimination and its companion statutory inhibition against commenting on a defendant's failure to testify in criminal cases have been the subject of many cases and comments. For the history of the provisions and general discussions as to what constitutes a prejudicial violation of them see 29 Mich. L. R. 1; 84 A. L. R. 784; 68 A. L. R. 1108.

There can be no question but that it is error to allude, either directly or indirectly, to the defendant's failure to testify in his own behalf, the statute is mandatory in that respect, although it is limited to its express terms and requires timely and proper objection and exception. [State v. Shuls, 329 Mo. 245, 44 S. W. (2d) 94; State v. McKeever, 339 Mo. 1066, 102 S. W. (2d) 22; State v. Woolsey (Mo.), 33 S. W. (2d) 955; State v. Mosier (Mo.), 102 S. W. (2d) 620.] Furthermore, the provisions protect a defendant in the preliminary investigation of the case as when he had been *compelled* to testify at a preliminary examination, a coroner's inquest or before a grand jury or was ignorant as to his rights and over-persuaded or imposed upon. [State v. Young, 119 Mo. 495, 24 S. W. 1038; State v. Naughton, 221 Mo. 398, 120 S. W. 53; State v. Lehman, 175 Mo. 619, 75 S. W. 139; State v. Blackburn, 273 Mo. 469, 201 S. W. 96; State v. Pearson (Mo.), 270 S. W. 347.] The limitation on the protection as to preliminary or collateral proceedings being that if a defendant *voluntarily* testifies at a coroner's inquest or other proceeding he thereby waives the privilege against self-incrimination. [Compare: State v. McDaniel, 336 Mo. 656, 80 S. W. (2d) 185; State v. Faulkner, 175 Mo. 546, 75 S. W. 116; State v. Taylor, 202 Mo. 1, 100 S. W. 41; State v. Young, 119 Mo. 495, 24 S. W. 1038; State v. Blackburn, 273 Mo. 469, 201 S. W. 96; State v. Cook (Mo.), 44 S. W. (2d) 90.] It may be noted that even when the privilege has been infringed that the error may be cured during the trial of the case by a proper rebuke from the court to offending counsel, a timely, adequate withdrawal by counsel or by an instruction from the court. [84 A. L. R. 1. c. 795.] It will be noted that the above instances are the converse of the question as presented here.

Several jurisdictions have announced and followed the rule that if

a defendant does not testify at his preliminary hearing but does testify on the trial of his case that he thereby waives the privilege against self-incrimination. [Commonwealth v. Smith, 163 Mass. 411; People v. Prevost, 219 Mich. 233, 189 N. W. 92; Taylor v. Commonwealth, 17 Ky. Law Rep. 1214, 34 S. W. 227.] The reason given usually being that while a defendant's failure to testify at his preliminary does not necessarily tend to prove his guilt or innocence it does bear on his credibility as a witness. As would be supposed the most convincing reasons for holding the privilege waived by testifying on the principal trial have been advanced by Mr. Justice STONE in Raffel v. United States, 271 U. S. 494, 70 L. Ed. 1057, 46 Sup. Ct. 567. They are, in the first place, that by testifying on the second hearing, whatever the character of the first one may have been, the defendant completely casts aside his immunity and may be cross-examined, within the appropriate rules, as to any incriminating circumstances of which he may have knowledge and which would be the basis for an unfavorable inference by the jury. And, if the questions are logically relevant and competent and the cross-examination revealed that the real reason for the defendant's failure to testify the first time was a lack of faith in the truth or probability of his own story his answers would have a direct bearing on his credibility. In the second place, he states that there is no reason underlying the policy of the immunity against complete waiver and, therefore, no substance in the argument that the rule should be qualified because it operates "to bring pressure on the accused to take the stand on the first trial, for fear of the consequences of his silence in the event of a second trial; and might influence the defendant to continue his silence on the second trial because his first silence may be made to count against him," because every accused is under some pressure to testify for fear of a jury's unfavorable inference by reason of his silence and when he does testify he is yet under the same pressure to testify fully and not partially. And so, it was held that the immunity against self-incrimination applied only to the tribunal in which the defendant preserved it by refusing to testify.

On the other hand, several jurisdictions have adopted the view that the constitutional provision against self-incrimination and the statutory inhibition against comment on failure to testify applies to the privilege asserted or exercised at examining or preliminary trials and is not waived by the defendant's subsequently testifying in his own defense. [Parrott v. Commonwealth, 20 Ky. Law Rep. 761, 47 S. W. 452; Bunckley v. State, 77 Miss. 540, 27 So. 638; Eads v. State, 66 Tex. Cr. 548, 147 S. W. 592; Scroggins v. State, 97 Tex. Cr. 573, 263 S. W. 303; Hays v. State, 101 Tex. Cr. 162, 274 S. W. 579; Parrott v. State, 125 Tenn. 1, 139 S. W. 1056.]

As we have previously stated, this is the first time the exact question has ever been presented in a criminal case in this State.

But, even though there may be some confusion about it, the court en banc has decisively decided the point in an analogous situation in Masterson v. St. Louis Transit Co., 204 Mo. 507, 103 S. W. 48. That was a wrongful death case the trial of which resulted in a verdict for the defendant. On the trial of the case the street car motorman testified and the plaintiff sought to impeach him by showing that he was present at the coroner's inquest and refused to testify for the stated reason that he might incriminate himself. On appeal the plaintiff assigned as error the exclusion of the evidence and the court held that by testifying in circuit court he had not waived the privilege against incrimination which he had exercised at the coroner's inquest. Judge Woodson dissented and criticized the reasoning of the case but followed it under similar circumstances in Garrett v. St. Louis Transit Co., 219 Mo. 65, 118 S. W. 68. The same view was applied to a witness claiming the privilege at the taking of a deposition and testifying in circuit court on behalf of the defendant in Hill v. Missouri Packing Co. (Mo. App.), 24 S. W. (2d) 196. However, a contrary result was reached when the witness claimed the privilege at the taking of depositions and testified at the trial in Summers v. Keller, 152 Mo. App. 626, 133 S. W. 1180. The opinion was affirmed on certification in Keller v. Summers, 262 Mo. 324, 171 S. W. 336, but this point was not discussed by the Supreme Court. And, in Harrison v. St. Louis-San Francisco Ry. Co. (Mo. App.), 291 S. W. 525, the Masterson case was distinguished and the privilege was held to have been waived when the witness had refused to testify when his deposition was sought but had testified in his own defense when charged with killing the deceased and his criminal case had been disposed of when he was testifying for the defendant in the civil case. The Masterson case was applied to a possible witness in a criminal case in State v. Weber, 272 Mo. 475, 199 S. W. 147. In that case Weber was convicted of statutory rape. In the course of his trial he sought to introduce the testimony of one Waddle taken at his preliminary hearing and at which Waddle had declined to answer the question of whether or not he had had sexual intercourse with the prosecuting witness for the reason that it might incriminate him. And even though Waddle was not present at the trial claiming the privilege the court held that it was not error to exclude his testimony at the ▮ preliminary because his claim of privilege was not a proper matter for the jury's consideration.

The reasons given by courts holding that the privilege claimed by a witness at a coroner's inquest or at the taking of depositions is not waived by subsequently testifying for a defendant in a civil case are, it seems to us, just as cogent and convincing as those given by courts adopting a contrary view. In the first place, the privilege against self-incrimination is a part of the Bill of Rights, a personal privilege, guaranteed by the Constitution in unambiguous language;

and, the statutory protection against comment, by court or counsel, is a plain legislative mandate, the underlying policy of which is and was for the draftsmen of the acts and not the courts. Secondly, since it is a right and a privilege granted the citizen he should be permitted to exercise it with complete freedom and not at the peril of being impeached by it in the event that he should ever attempt to assert his innocence. No suspicion or incrimination should follow the assertion of a constitutionally given right. Thirdly, it is just as logical to assert that a qualification of the privilege would and does operate to bring pressure on an accused to testify in the first instance for fear of the consequences of his silence in the event of a trial as it is to say that it does not so operate. Or, to say that he might remain silent throughout lest his silence be used against him. Fourth, the policy of the two provisions is that "no person shall be compelled to testify against himself in a criminal case" and if he does not testify it shall not be commented on or used against him. And fifth, as Judge VALLIANT said in Masterson v. St. Louis Transit Co., 204 Mo. 1. c. 526, 103 S. W. 1. c. 48:

"We must not interpret this provision of our Constitution as if it was designed to protect the guilty nor should we presume that one who avails himself of it is hiding his guilt. The object of the law is to protect the innocent and the law still covers the man with the presumption of innocence even when he refuses to give testimony that might be turned against himself."

If the privilege against self-incrimination and comment is not waived by a witness who has claimed it at a coroner's inquest or at the taking of depositions or at a preliminary hearing and who subsequently testifies for a defendant in a civil case or is not present as a witness at the trial of the criminal case a fortiori it is not waived by a defendant in a criminal case who has claimed the privilege at his preliminary and who attempts to defend himself when tried for the crime. Because of error in proving and arguing that the appellants did not testify at their preliminary hearing before the justice of the peace the judgment is reversed and the cause remanded. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.