**STATE of Missouri, Plaintiff-Respondent,**

**v.**

**Willie Thomas ARMSTRONG, Defendant-Appellant.**

**No. 49039.**

Supreme Court of Missouri,

Division No. 1.

Nov. 14, 1962.

Leonard C. Jacobs, St. Louis, for appellant.

Thomas F. Eagleton, Atty. Gen., James P. Jouras, Special Asst. Atty. Gen., Jefferson City, for respondent.

DALTON, Presiding Judge.

Defendant has appealed from a conviction and a sentence of ten years for burglary and three years for stealing, the sentences to run concurrently, and for which sentences he was committed to the Department of Corrections of the State of Missouri. Prosecution was under the Habitual Criminal Act, since it was alleged and shown that on October 14, 1946, defend had been convicted of murder in the first degree in the Circuit Court of the City of St. Louis, and had been sentenced to imprisonment in the state penitentiary for the term of his natural life. It was further alleged and shown that, on the same day, he had been convicted of two charges of larceny from a dwelling house, and had received a sentence of two years in the state penitentiary for each offense, but to be served concurrently with the prior sentence. He had been released on parole on March 10, 1959. A trial of the cause was had to a jury and a verdict returned, finding defendant guilty of burglary in the second degree and stealing, as charged. After defendant's motion for a new trial had been filed and ruled, sentence was imposed.

■ Error is first assigned on the court's action in overruling defendant's motion for judgment of acquittal presented at the close of all of the evidence. It is contended that the evidence was insufficient to make out a submissible case of burglary in the second degree, or of stealing in connection therewith, hence a detailed review of the evidence is required.

■■ In determining the sufficiency of the evidence to support the conviction for the crimes charged against defendant, the court accepts as true all of the evidence in the record tending to show defendant's guilt, whether the same be circumstantial or direct in nature, together with all favorable inferences reasonably to be drawn therefrom. Defendant's contradictory evidence, if any, is to be disregarded. If a submissible case is made out, the truth of the testimony and the reasonableness of the inferences to be drawn are exclusively for the jury. State v. Brewer, Mo.Sup., 325 S.W.2d 16, 20; State v. Morris, Mo.Sup., 307 S.W.2d 667, 668.

The evidence shows that Melville Friedman and his wife Goldie, as partners, owned and operated a pawnshop under the name of Friedman Loan and Brokerage Company at 2600 Chouteau in the City of St. Louis. The shop was located at the southwest corner of Jefferson and Chouteau Avenues. Jefferson is a north and south street, while Chouteau extends east and west. The jewelry window of the Friedman shop faced on Chouteau. Other windows exhibited clothing. Mr. Friedman, one of the owners, closed the shop at 5:30 p. m. on March 24, 1961. There were no windows broken when he left the shop. The windows of the pawnshop were equipped with a burglar alarm system of sensitive tape and connected with the American District Telegraph office, referred to as A.D.T. The tape extended around the windows and was about five-eighths of an inch wide. This alarm system was of the silent type and did not sound at the building, but at the A.D.T. office and that office would notify the police department. When Mr. Friedman left the shop the jewelry window contained a Zeiss Ikon, 35 mm. camera, a Cine Kodak, a Schick razor, another small camera and other articles.

At approximately four minutes after four o'clock on the morning of March 25, 1961, Police Officer George Sneed and Patrolman Avery, in a two-man police car, received a call from the police dispatcher that an alarm "was sounding over the radio" at 2600 Chouteau Avenue. The officers were then driving north on Jefferson Avenue and

were approximately two and one-half blocks south of the Friedman pawnshop. They proceeded on north and, when they were within about a block of the corner of Chouteau and Jefferson, defendant "rounded the corner of Chouteau and proceeded to walk south on Jefferson on the west side of the street." Defendant was proceeding along the east side of the pawnshop and, when the defendant had reached a point approximately thirty to thirty-five feet south of Chouteau, the police car met him and made a U-turn in Jefferson and approached him from the rear. At the time the officers first saw defendant he was walking, but, upon seeing the car turn around in the street to come up along side of him, defendant started to run, whereupon Officer Sneed stepped out of the car with a shotgun, ordered defendant to halt and advised him he was under arrest. Defendant promptly stopped and offered no resistance.

At the time of his arrest defendant was holding a movie camera in his hand, and when first observed he had his hands folded, as he walked along the street, so that it appeared he was hiding something. He was, in fact, also holding an electric shaver and in his right coat pocket he had two more cameras. Defendant had no gun, gloves or sack and no cuts or scratches appeared on his hands. When the police arrived at the intersection of Jefferson and Chouteau they saw no other person in that vicinity, except the defendant, and there were no automobiles on the street or parked in the vicinity.

After the arrest of defendant, the officers examined the Friedman shop, 2600 Chouteau. The officers found that the plate-glass window facing Chouteau had been shattered and a hole three by five feet made in it. In the shop, about ten feet back of the broken window, the officers found "a rough stone with an odd shape to it and of light gray material." The stone had apparently been used to break the plate-glass window. The stone was also referred to as a piece of brick. The officers were admitted to the shop by a representative of the A.D.T., who had a key and arrived about two minutes after the officers had arrested defendant. Mr. Friedman also received a telephone call from the A.D.T. office on the early morning of the 25th; he thought the call came sometime between 3 and 4 a. m., to the effect that the front window of his shop had been broken. He immediately went to his shop and observed that the jewelry window on the Chouteau Avenue side had been broken. He then proceeded to the Third District Police Station where he was shown three cameras and a Schick razor, which he identified as his property and as having been in his shop window when he left the shop on the evening of March 24, 1961. He was also shown another piece of jewelry that did not belong to him. He testified that the Zeiss Ikon, 35 mm., camera cost him twenty-five dollars, the Cine Kodak two dollars, the Schick razor five dollars and the other camera two dollars. The articles had been taken in by him on pawn at his pawnshop "at one time or another," and all were out of pawn at the time of the alleged occurrence.

When arrested, defendant was wearing a light gray three-quarter length car coat, a dark gray pair of trousers, a brown shirt, brown shoes and a dark gray hat. The car coat, trousers and hat were forwarded to the police laboratory for analysis, along with the rock, which the officers had obtained from inside the pawnshop, and some fragments of the plate glass taken from inside the Friedman jewelry window.

The officers did not see the defendant break the window and did not know what time the rock was thrown through the window, nor did they know when the alarm system was activated, nor did Mr. Friedman know what time lag there may have been between the time the rock was thrown through the window and the time the police were notified and arrived at the scene.

A chemist, employed by the St. Louis department, received the car coat, pants, hat, rock and some specimens of glass from the

police officers and conducted a careful examination. His testimony tended to show that from the debris in a pocket of the car coat he found a small piece of glass which, upon comparison, he found to have the same refractive index and specific gravity as the specimen of glass submitted to him from the jewelry window. He also found some glass in a pocket of the pants that was not of the same type as the glass broken from the pawnshop window. In further examination, the witness had removed some fibers and fiber-like fuzz from the pockets of the coat and found several small pieces of fiber and fiber-like fuzz of the type normally found in a coat pocket. These he compared with a small group of fibers that were found on the brick or rock. The fibers on the rock were of several different colors and of the same type and kind of the fibers from the pocket of the coat. Some of the fibers from the coat pocket matched the fibers found on the rock and also the fibers on the glass from the coat pocket. He also said there was nothing special about the broken glass from the pawnshop window, since there was other glass in the St. Louis area of the same specific gravity and density as the glass broken from the pawnshop window. The fibers, mainly wool and cotton, found on the rock, although of the same color, type and kind as found in the coat pocket, did not necessarily come from the coat pocket and the witness made it clear that he was not testifying that the small fragment of glass found in defendant's coat came from the pawnshop window; or the fibers on the rock from the coat pocket.

Defendant had been employed by the Grocers Terminal Warehouse Company for more than two years prior to his arrest and he frequently handled material in glass jars, even broken glass jars, but no empty glass jars. Defendant did not testify in his own behalf, but offered his wife, who said that defendant had left his home about 10:30 to 11 o'clock on the evening of March 24th, saying that he was going to look for his brother, Woodrow Armstrong, with

whom he worked at the Grocers Terminal Warehouse Company. His brother, Woodrow Armstong, testified that he saw defendant between two and three o'clock on the morning of March 25, 1961, at the house of Jake Rucker in the 2700 block of Chouteau Avenue and was told by defendant that he was going home. To reach a bus to go to his home defendant would pass the Friedman pawnshop. Defendant had received $97.80 in take-home pay on March 24, 1961, and had purchased some clothes for his wife and left her fifty dollars in cash from the proceeds of his check.

In support of the contention that the evidence is insufficient to sustain a conviction of burglary in the second degree, the appellant cites State v. Goddard, 316 Mo. 172, 289 S.W. 651, 653, where the court held the evidence devoid of any substantial evidence of burglary in the second degree. A short quotation from that case will demonstrate it to be inapplicable. The court said: "There was an utter failure of proof to establish the corpus delicti in this case. In order to establish the same, it was necessary for the state to show beyond a reasonable doubt that defendant, or some one, on the date aforesaid, burglariously broke into said building with the intent to commit a crime. For aught that appears from the evidence, the few dollars worth of goods found in the sack, if they were ever in said building, may have been bought in the ordinary course of business, instead of being obtained by burglary. The state not only failed to produce substantial evidence tending to show that defendant burglariously broke into said building on the date aforesaid, with the intention of committing a crime, but there is an entire failure of proof tending to show that he was in the building on said date, or that said goods were ever stolen from the store in the commission of a burglary, or otherwise."

In the case before us a three by five foot hole had been broken in the plate-glass of the Friedman jewelry window and three cameras and a razor removed. The inference of human agency could be inferred

from the fact that a large rock was found some ten feet inside the store bearing fibers identical in color and texture of those taken from the defendant's coat pocket and a piece of glass from his coat pocket was of the identical refractive index and density of the glass in the window. Further, the described property, which had been in the window, had been removed therefrom and was in defendant's possession as he was seen to turn the corner of Chouteau and Jefferson within a few feet of the broken window from which the goods were taken. These facts were sufficient to support a finding that the breaking and entering was done by human agency with the intent to steal therein. In addition, upon the arrival of the police car and its U-turn in the street, defendant began to run until he was ordered to halt and placed under arrest with the aid of a shotgun.

Appellant further insists that the evidence of burglary, second degree, is completed circumstantial and entirely consistent with defendant's innocence; and that the verdict was reached by "guess, speculation or prejudice." Appellant cites State v. Archer, Mo.Sup., 6 S.W.2d 912, 914; State v. Bayless, 362 Mo. 109, 240 S.W.2d 114, 119. These cases merely state the general rule that, "Where the evidence is 'entirely circumstantial the facts and circumstances relied upon by the state to establish guilt must not only be consistent with each other and with the hypothesis of defendant's guilt, but they must also be inconsistent and irreconcilable with his innocence, and must point so clearly and satisfactorily to guilt as to exclude every reasonable hypothesis of innocence.'" (240 S.W.2d 114, 119 [4, 5].) In the Bayless case the evidence was held sufficient. In the Archer case the evidence was held insufficient and the reasons were stated. In that case the defendants were charged with stealing four tires off of a truck. The court said: "Appellants were not seen nearer to the truck than an eighth of a mile, or, as some of the witnesses expressed it, 'a half a quarter.' Appellants were not even coming from the direction of the truck when seen, for Carreck testified that their automobile was 'at the side of the public road' when he first discovered it. Appellants were not found in possession of, nor even near to, the stolen tires. Said tires had neither been discovered nor accounted for at the time of the trial." (6 S.W.2d 912, 913, 914.)

Appellant also cites State v. Casey, Mo. Sup., 247 S.W. 114, 116, but in that case the court pointed out that the evidence signally failed "to show any conspiracy, or that defendant was ever in the bank building, or that he had any connection with the red automobile described in evidence, or that any of the stolen property was found in his possession at any time, or that he was ever in the village of St. Clair, where the robbery occurred."

It will be unnecessary to again review the evidence shown by the record in this case. It is sufficient to say that the evidence as to burglary, second degree, was entirely sufficient to meet the requirements of the rule applicable to a circumstantial evidence case; and that, if the jury believed the State's evidence and drew therefrom the reasonable favorable inferences, the evidence was substantial and sufficient to support the verdict as to burglary. State v. Burton, Mo.Sup., 357 S.W.2d 927, 931(4).

Appellant further contends that the evidence was insufficient to sustain a conviction of stealing and cites State v. Fogle, 211 Mo.App. 18, 244 S.W. 105 and State v. Knolle, 90 Mo.App. 238. Neither case aids the appellant. In the Fogle case a stolen tire was found on defendant's automobile while it was parked in a garage in the city of Memphis and the state failed to prove any connection between defendant and the stolen tire and the opinion points out that "the state not only failed to prove that the defendant placed the automobile, on which the stolen tire was found, in the Memphis garage on October 5, 1919, but failed to prove that said tire was on said car at that time." (244 S.W. 105, 107[1].) In the Knolle case the court said: "Appel-

lant had no boxes on his person and those the policemen saw him and his companion tampering with, were not removed from their places. There was no theft of them, of course, because there was no asportation." (90 Mo.App. 238, 240.)

Under this assignment appellant also insists that there was a complete failure to prove "that the items of property allegedly stolen had any value at the time of the alleged taking"; and that, therefore, an essential element of the offense charged is lacking.

■■ In determining whether personal property has "value," and the amount thereof, as the term is used in Secs. 560.156 and 560.161 RSMo 1959, V.A.M.S., reference, of course, is not to "the value to the owner," but as to the value of the property on the open market. In this case it appears that the property in question, which was the subject of the larceny, was exhibited in the jewelry window of the Friedman shop and an inference could be drawn that it was being offered for sale. The amount paid for the property by the proprietor of the shop was some evidence of its value and, in addition, the particular items in question were offered in evidence before the jury and were of the type and kind from which the jury might well judge whether or not they had any value. As there was evidence in the record to show burglary in the second degree and a finding thereof was made by the jury, it was only necessary for the evidence, as to stealing, to show that the property had some value, and for the jury to find that, at the time the property was taken, it had some value in order to support the finding of "stealing" in connection with the finding of burglary. In the circumstances of this case the value of the property stolen was immaterial so long as it had some value, and the evidence was sufficient from which the jury could so find. State v. Duncan, 336 Mo. 600, 80 S.W.2d 147, 151 (8–10); State v. Ruyle, Mo.Sup., 318 S.W.2d 218, 221(5). Further, the circumstances under which appel-

lant was arrested and found to be in possession of the mentioned property were sufficient to support the jury's finding that defendant was guilty of the offense of stealing in connection with the burglary.

■ Appellant further contends that the court erred in giving Instructions 1, 2 and 3 because said instructions "referred to the pawnshop, allegedly burglarized, and the articles of property, allegedly stolen, as being the property of Melville Friedman, d/b/a Friedman Loan and Brokerage, which was contrary to the uncontroverted evidence that said shop and property were actually owned by Melville Friedman and Goldie Friedman." Appellant's theory is that instructions should be based upon the evidence; and that to submit ownership of one of the two partners was detrimental to defendant and denied him a fair and impartial trial, since it would indicate to the jury that it might take liberty with the evidence, or lack of evidence, on other issues.

Appellant concedes the existence of Supreme Court Rule 24.06, V.A.M.R. which provides: "When any offense shall be committed upon or in relation to any property belonging to several partners or owners, the indictment or information for such offense shall be deemed sufficient if it allege such property to belong to any one or more of such partners or owners, without naming all of them." The information in this case was, therefore, sufficient and the submission in the instruction following the information was also sufficient. Proof of appellant's guilt of the crimes charged, or either of them, depended upon the question as to whether appellant feloniously broke into the premises of another, and to whether he stole from said premises the property of another as described in the charge. Appellant does not contend that Melville Friedman had no proprietary interest in the business. His occupancy and possession of the building and his interest as an owner of the property is not questioned. In any event, the proprietary interest of Melville Friedman in the pawnshop and in

its contents was adequately proven, and it clearly identified him as an owner of the business. The failure of the instructions to submit to the jury the possession of the building and the ownership of the property as being in the partnership, rather than in Melville Friedman, as an individual, was not material to appellant's defense or to the establishment of his guilt of the offenses charged. The assignment is without merit. See State v. Zammar, Mo.Sup., 305 S.W.2d 441, 442 (1, 2); State v. Hedgpeth, 311 Mo. 452, 278 S.W. 740, 741(2).

■ Appellant further contends that Instruction 2 is erroneous because it "fails to require the jury to find that defendant had criminal intent to steal and convert to his own use at the time said property was allegedly taken," and because "said instruction, as framed, presupposes a verdict of guilty on the charge of burglary." When all of the instructions are read together, as they must be, it is plain that the essential elements of each offense, both burglary and stealing, are correctly set forth. Instruction 2 does not presuppose a finding of a verdict of guilty of burglary, but clearly and concisely requires a finding thereof beyond a reasonable doubt as submitted by Instruction No. 1 as a condition precedent to any finding of the companion offense of stealing as submitted in Instruction No. 2. We find nothing in the language of Instruction 2 which would mislead the jury or convey a false impression or create a "presupposition" of defendant's guilt or innocence on the charge of burglary. See Instruction No. 2, State v. Speritus, 191 Mo. 24, 90 S.W. 459, 460.

■ Appellant further contends that the court erred in giving Instruction No. 5 because the instruction fails to require the State to prove defendant's guilt beyond a reasonable doubt in that in the instruction, by defining reasonable doubt as "a substantial doubt" as to defendant's guilt, "imposes a lesser burden of proof upon the state of defendant's guilt than the law requires." We find no merit in this assignment since the instruction, in the form given, repeatedly has been approved by this court. See State v. Jackson, Mo.Sup., 338 S.W.2d 848, 852; State v. Stogsdill, 324 Mo. 105, 23 S.W.2d 22, 26(7); State v. Drake, Mo.Sup., 298 S.W.2d 374, 377(7–8). Since the instruction in the form given has so often been approved it is needless to further discuss the objections now levelled against it.

■ Appellant further contends that the court erred in giving Instruction No. 6 because the instruction "is confusing and permits the jury to make 'a roving commission' and consider matters outside the evidence, and fails to require the jury to find that the circumstantial evidence must not only be consistent with the guilt of defendant but also inconsistent with his innocence." Appellant again cites the Archer and Bayless cases, supra, and closes his argument with the words: "It is the contention of defendant that the above instruction does not set out with sufficient clarity and emphasis the requirement that such circumstantial evidence must be inconsistent with innocence." The instruction included the following sentence: "Crime may be proved by circumstantial evidence as well as by direct testimony, but circumstantial evidence should always be cautiously considered, and to warrant a conviction it must be consistent with Defendant's guilt and must exclude every reasonable hypothesis or supposition consistent with Defendant's innocence."

A careful consideration of Instruction No. 6 discloses that it is not subject to the criticism levelled against it. The terminology of an instruction somewhat similar was approved in State v. Fletcher, Mo.Sup., 244 S.W.2d 98, 103. In any event, no certain and specific terminology is required in a circumstantial evidence instruction so long as it advises the jury, in substance, that the circumstances proved must be consistent with each other and with the hypothesis that the defendant is guilty, and inconsistent with any theory of his innocence and with every reasonable hypothesis, ex-

cept that of guilt. State v. Conway, 348 Mo. 580, 154 S.W.2d 128, 131(4, 5); State v. Maggard, 250 Mo. 335, 157 S.W. 354, 357.

The judgment is affirmed.

All concur.